THE GRIFFIN HOSPITAL *v.* COMMISSION ON HOSPITALS AND HEALTH CARE
(12604)

HEALEY, SHEA, DANNEHY, ASPELL and F. HENNESSY, Js.

Argued March 13—decision released June 11, 1985

*Thomas J. Ring,* assistant attorney general, with whom were *Richard J. Lynch,* assistant attorney general, and, on the brief, *Joseph I. Lieberman,* attorney general, and *Maite Barainca,* assistant attorney general, for the appellant (defendant).

*A. Searle Pinney,* with whom, on the brief, were *Jeffrey B. Sienkiewicz* and *Michael S. McKenna,* for the appellee (plaintiff).

SHEA, J. Pursuant to the requirements of General Statutes § 19a-156 (a) the plaintiff hospital submitted to the defendant commission on hospitals and health care for its approval a proposed operating and capital expenditures budget for the fiscal year 1985 (October 1, 1984, through September 30, 1985). The commission disapproved the budget as submitted and ordered substantial reductions in operating expenses, revenues and capital expenditures. The hospital appealed the commission's order pursuant to General Statutes §§ 19a-158 and 4-183 to the Superior Court. In conjunction with its appeal the hospital applied for a stay of the commission's order until the appeal should be decided in the trial court. After a hearing the court issued a stay subject to several conditions. From this judgment staying the order until a decision on the merits of the appeal in the trial court, the commission, after obtaining certification under General Statutes § 52-265a on the grounds "that a substantial public interest is involved and that delay may work a substantial injustice," has appealed to this court.[1]

---

[1] In *Laurel Park, Inc.* v. *Pac,* 194 Conn. 677, 678–79 n.1, 485 A.2d 1272 (1984), we determined that appeals certified pursuant to General Statutes § 52-265a are not subject to the final judgment restriction upon our jurisdiction imposed by General Statutes § 52-262.

In claiming that the trial court erred in granting the stay, the commission claims: (1) that the provision of the Uniform Administrative Procedure Act, General Statutes § 4-183 (c), relied upon as authority for the stay, is inapplicable to administrative appeals involving the hospital rate regulation function of the commission; (2) that the trial court in reaching its decision did not employ the appropriate legal standard for staying an order of an administrative agency; and (3) that the stay, even with the conditions imposed, does not adequately protect the interests of patients or uphold the regulatory powers of the commission.

The plaintiff Griffin Hospital is a nonprofit institution that operates a 281 bed acute care general hospital in Derby. Its proposed operating budget for the 1985 fiscal year would provide $42,454,000 of "net patient revenue" and allow $39,210,000 of operating expenses. Its capital expenditures budget was $1,917,000. The defendant commission, after a hearing upon the proposed budget, ordered that net patient revenues be reduced to $31,114,000 and that capital expenditures be limited to $517,000.

Upon the hospital's appeal from this order and its application for a stay thereof, following an evidentiary hearing that occupied two trial days, the court ordered a stay subject to the conditions that 20 percent of the revenues received in excess of those allowed under the commission's order should be held in escrow, that patients' bills contain a notice of possible refunds, and that the hospital report monthly to the commission its revenues and the amount held in escrow.

The hospital had also appealed the commission's order of reductions in its operating and capital expenditures budget for the 1984 fiscal year. The trial court, *Curran, J.*, had ordered a stay pending the outcome of that appeal and also had imposed conditions similar

to those contained in the order before us, including a 20 percent escrow provision. A judgment on the merits of that appeal was rendered on June 19, 1984, and the case was remanded to the commission for further proceedings to correct its order concerning the 1984 budget in accordance with the decision.

I

The claim of the commission that § 4-183 (c) of the Uniform Administrative Procedure Act (UAPA) is inapplicable when an appeal is taken from orders relating to hospital budgets is based upon the assumption that, absent commission approval, none of the proposed charges or expenditures may be implemented. The commission analogizes its function in approving hospital budgets to the rate-making authority of the public utilities control authority where a stay pursuant to an appeal by a regulated company merely leaves in effect previously approved rates and does not allow the collection of a requested increase that has been denied by the agency. See *Connecticut Light & Power Co.* v. *Public Utilities Control Authority,* 34 Conn. Sup. 172, 175, 382 A.2d 1003 (1977). This feature of rate regulation by that agency is based upon a statutory provision that expressly prohibits a public service company from charging rates in excess of those previously approved. General Statutes § 16-19. No comparable provision is found in the statutes defining the powers of the commission on hospitals and health care; General Statutes §§ 19a-145 through 19a-166; though its ultimate authority to control rates and budgets, after an opportunity for judicial review, cannot be disputed. See *Hospital of St. Raphael* v. *Commission on Hospitals & Health Care,* 182 Conn. 314, 317, 438 A.2d 103 (1980).

General Statutes § 19a-158 provides expressly that health care institutions aggrieved by a decision of the commission may appeal in accordance with § 4-183 of

the UAPA. Under subsection (c) of § 4-183 such an appeal does not automatically stay enforcement of an agency decision, but either the court or the agency may grant "a stay upon appropriate terms." See *Laurel Park, Inc.* v. *Pac,* 194 Conn. 677, 686, 485 A.2d 1272 (1984). The commission, while recognizing that § 4-183 (c) literally empowers a court to stay a commission order when an appeal is taken, contends that such a stay cannot affirmatively authorize a budget that has been disapproved by that agency. We perceive no such limitation on the broad authority given to a court by § 4-183 (c) to order "a stay upon appropriate terms." Stays of enforcement of the orders of an administrative agency frequently have the effect of permitting the continuation of activities that normally require a license or other authority from an agency to be conducted legally. When a person appeals from the revocation of or refusal to renew his license or from orders affecting the operation of a business, a stay necessarily sanctions for its duration conduct that has been disapproved by the controlling agency.

The provision for "a stay upon appropriate terms" gives the court broad authority to fashion appropriate relief to protect the interests of all those involved during the pendency of an administrative appeal. The court, therefore, was not confronted with a Hobson's choice of adopting wholly the budgets favored by either the hospital or the commission. In granting a stay upon "appropriate terms" it could modify those proposals or effectuate its own budgetary plan as a modus vivendi.

## II

The commission claims next that the trial court used an erroneous standard in deciding to grant a stay. The court did not file a memorandum of decision but, in announcing the judgment at the conclusion of the tes-

timony and arguments, indicated that a "balancing of the equities" test had been followed. This test was defined as "a test which weighs the equities and balances the harm that may be suffered by the Appellant as the result of the enforcement of the Agency order or the decision, pending the appeal, against the public harm that may result from delaying the effectiveness of the Order or Decision." The court appears to have followed the language contained in a trial court decision; *Connecticut Life & Health Ins. Guaranty Assn.* v. *Daly,* 35 Conn. Sup. 13, 16–17, 391 A.2d 735 (1977); which adopted the balancing test suggested in 2 Cooper, State Administrative Law, p. 629. See *McCarthy* v. *Freedom of Information Commission,* 35 Conn. Sup. 186, 188–89, 402 A.2d 1197 (1979).

The state argues for a more demanding test in granting a stay, such as that developed by the federal courts in appeals arising under the federal administrative procedure act. *Hamlin Testing Laboratories, Inc.* v. *United States Atomic Energy Commission,* 337 F.2d 221, 222 (6th Cir. 1964); *Virginia Petroleum Jobbers Assn.* v. *FPC,* 259 F.2d 921, 925 (D.C. Cir. 1958). This standard for a stay was applied in another trial court decision, *Waterbury Hospital* v. *Commission on Hospitals & Health Care,* 30 Conn. Sup. 352, 354–55, 316 A.2d 787 (1974). The federal standard focuses upon: (1) the likelihood that the appellant will prevail; (2) the irreparability of the injury to be suffered from immediate implementation of the agency order; (3) the effect of a stay upon other parties to the proceeding; and (4) the public interest involved.[2] These concerns are not incompatible with the "balancing of the equities" test used

---

[2] This federal standard is similar to the 1981 version of the Model State Administrative Procedure Act, 14 U.L.A. (1985 Sup.) § 5-111 (c), which provides:

"(c) If the agency has found that its action on an application for stay or other temporary remedies is justified to protect against a substantial threat

by the trial court. The particular factors specified in the federal standard undoubtedly warrant consideration by the trial court in the balancing process.

In the analogous situation of a temporary injunction to preserve the status quo until the rights of the parties can be determined after a full hearing on the merits, we have said that "the court is called upon *to balance the results which may be caused to one party or the other,* and if it appears that to deny or dissolve it may result in great harm to the plaintiff and little to the defendant, the court may well exercise its discretion in favor of granting or continuing it, *unless indeed, it is very clear that the plaintiff is without legal right.*" (Emphasis added.) *Olcott* v. *Pendleton,* 128 Conn. 292, 295, 22 A.2d 633 (1941). This criterion necessarily requires consideration of the probable outcome of the litigation. Decisions of our trial courts have frequently referred to the burden of an applicant to show a reasonable degree of probability of success before a temporary injunction to preserve the status quo may be granted. *Connecticut State Medical Society* v. *Connecticut Medical Service, Inc.,* 29 Conn. Sup.

---

to the public health, safety, or welfare, the court may not grant relief unless it finds that:

"(1) the applicant is likely to prevail when the court finally disposes of the matter;

"(2) without relief the applicant will suffer irreparable injury;

"(3) the grant of relief to the applicant will not substantially harm other parties to the proceedings; and

"(4) the threat to the public health, safety, or welfare relied on by the agency is not sufficiently serious to justify the agency's action in the circumstances."

This standard under the 1981 revision is applicable only after an agency has denied a requested stay and claims that such denial "is justified to protect against a substantial threat to the public health, safety, or welfare." In the present case no such application was made or denied and no such finding is contained in the record. Our own adaptation of the Model Administrative Procedure Act under the title, Uniform Administrative Procedure Act, General Statutes §§ 4-166 through 4-189, has not been amended to incorporate § 5-111 (c) of the 1981 revision.

474, 477–78, 293 A.2d 794 (1971); *Hopkins* v. *Hamden Board of Education,* 29 Conn. Sup. 397, 417, 289 A.2d 914 (1971); *Torrington Drive-In Corporation* v. *I.A.T.S.E.M.P.M.O. Local 402, A.F.L.,* 17 Conn. Sup. 416, 418 (1951) The need to show an irreparable loss unless the status quo is preserved has also been often mentioned. *Covenant Radio Corporation* v. *Ten Eighty Corporation,* 35 Conn. Sup. 1, 3, 390 A.2d 949 (1977); *Colchester* v. *Reduction Associates, Inc.,* 34 Conn. Sup. 177, 185, 382 A.2d 1333 (1977). The cases have also alluded to the harm likely to be sustained by other parties as well as the public from preservation of the status quo. *Connecticut Assn. of Clinical Laboratories* v. *Connecticut Blue Cross, Inc.* 31 Conn. Sup. 110, 121, 324 A.2d 288 (1973); *Martino* v. *L. D. DeFelice & Son, Inc.,* 16 Conn. Sup. 18, 19 (1948).

These considerations involve essentially the application of familiar equitable principles in the context of adjusting the rights of the parties during the pendency of litigation until a final determination on the merits. See *Stocker* v. *Waterbury,* 154 Conn. 446, 451, 226 A.2d 514 (1967); *Sisters of St. Joseph Corporation* v. *Atlas Sand, Gravel & Stone Co.* 120 Conn. 168, 176–77, 180 A. 303 (1935). We have indicated that the same principles are pertinent to the "due administration of justice" criterion of Practice Book § 3065 in deciding whether a stay following a judgment in the trial court should be terminated while an appeal is pending in this court. *Northeastern Gas Transmission Co.* v. *Benedict,* 139 Conn. 36, 42–43, 89 A.2d 379 (1952). It is not possible to reduce all of the considerations involved in stay orders to a rigid formula, however, as the commission claims the federal standards to require.

While we thus approve the "balancing of the equities" test employed by the trial court, we do not in its application eschew such factors as the likely outcome of the appeal, the irreparability of the prospective harm

to the applicant, or the effect of delay in implementation of the order upon other parties as well as upon the public interest. We have vested a large measure of discretion in trial judges in terminating or granting stays and, upon review, the issue usually is whether that discretion has been abused. *Hartford* v. *Hartford Electric Light Co.*, 172 Conn. 13, 14, 372 A.2d 130 (1976); *Northeastern Gas Transmission Co.* v. *Benedict,* supra, 41. The court in announcing the judgment from the bench at the conclusion of the trial in this case did not specify what ingredients had entered into the conclusion reached from balancing the equities "that more harm would be suffered by the Griffin Hospital, were the court not to grant the stay, than the other way around." The parties, however, had filed elaborate trial briefs discussing the very claims raised in this appeal, including the factors to be considered under the federal standard. These were supplemented after completion of testimony by unrecorded oral arguments in which the parties presumably discussed the same contentions. Since no further articulation of the basis for the judgment has been sought from the trial court, we cannot ascertain precisely what factors were considered in arriving at the conclusion that the balance of the equities favored granting a stay upon the conditions specified. "We have frequently indicated that if an appellant requires amplification or clarification of the factual basis of a decision to present his claims of error he should seek a further articulation from the trial court." *Newington* v. *General Sanitation Service Co.,* 196 Conn. 81, 84, 491 A.2d 363 (1985). We cannot assume, as the commission contends, that the trial court did not give due weight to such concerns as the probable outcome of the appeal, the irreparability of the loss, and the interests of other parties as well as the public.

In sum, the claim that the court applied the wrong standard must be rejected because we approve the

"balancing of the equities" test that was used. Among the "equities" to be placed on the scales, of course, are the general equitable considerations which are involved in the issuance of a temporary injunction to preserve the status quo pendente lite. These include the concerns specified in the federal standard, which appear to have been derived from the same equity source. The failure of the trial court to refer to them specifically in rendering judgment does not, in the absence of a request for further articulation, imply that they were ignored in the balancing process used.

In arguing that the court applied an inappropriate standard, the commission claims that the hospital failed to make "any showing" in respect to (1) irreparable injury and (2) the probability of overturning the agency order. Our review indicates sufficient support for the stay in both these respects. There was testimony that the hospital would experience serious difficulties in rebilling patients for additional charges if its proposed 1985 budget should be upheld on appeal and that substantial amounts of revenue would be irretrievably lost. Many programs and facilities, such as the emergency department, the psychiatric department, the teaching program, and one medical-surgical unit would have to be closed immediately. These services presumably would have to be reestablished if the appeal should be successful.

With respect to the likelihood of success, the hearing on the stay did not purport to explore fully the merits of the hospital's appeal, but the court did have the benefit of the decision concerning the 1984 budget appeal, in which $2,150,000 was restored to the hospital's operating budget and $689,000 to its capital budget. Although this 1984 budget decision has since been appealed to this court, where it is still pending, it was significant with respect to the merits of at least some of the issues, because the commission used its

1984 budget order as the basis for its action on the 1985 budget. It does not appear that at the hearing on the stay in this case the commission made any counter proposal to allow the hospital to collect revenues for 1985 in accordance with the 1984 budget decision. Although that decision might well have served as a guideline for the trial court in fashioning the conditions of the stay, in the absence of such a suggestion by the commission, we find no abuse of discretion in the failure to have done so. In any event the earlier decision could be viewed by the court as indicating that some of the hospital's contentions had substantial merit.

## III

The remaining claim is that the stay as ordered did not adequately protect the interests of patients or uphold the regulatory powers of the commission. The central issue raised is whether the trial court abused its discretion in concluding from the evidence that the circumstances warranted a stay upon the conditions imposed. See *Hartford* v. *Hartford Electric Light Co.*, supra, 14; *Northeastern Gas Transmission Co.* v. *Benedict,* supra, 41.

The commission claims that, since the purpose of a stay is to preserve the status quo pending the outcome of a suit, the court should have required that all of the revenue collected by the hospital in excess of that authorized in the revised 1985 budget ordered by the commission be placed in escrow instead of only 20 percent, as provided in the stay order. From the testimony presented, however, the court could reasonably have found that the amount ordered to be escrowed would be sufficient to reimburse any patients who might ultimately prove to have been overcharged. It appeared that only 10 percent of the patients paid their charges directly. About 45 percent of hospital revenues came from Medicare patients whose bills were not paid on the basis of

the rates established by the hospital but according to a schedule of fixed charges for services set by federal authorities. Blue Cross payments provided 30 percent of patient revenues and these are subject to a discount of 11 percent at the end of the year.[3] Commercial insurers, who ordinarily do business on a continuing basis with the hospital, paid the remaining 15 percent of patient revenues.[4] A 20 percent escrow had been established in the stay order issued pending the appeal of the hospital's 1984 budget. There was testimony that if both the 1984 and 1985 budget appeals were wholly unsuccessful, the amount of the resulting refund would be $3,800,000, of which $2,400,000 would have accumulated under the 20 percent escrow. Of the balance of $1,400,000 to be refunded, $1,000,000 was presently available from unrestricted funds donated to the hospital, leaving $400,000 to be obtained from lenders or other sources. The evidence, therefore, provides support for the conclusion of the court that the 20 percent escrow, together with other hospital resources, provided sufficient security for any refunds which might ultimately be required. An escrow of the full amount of revenues collected above the amounts authorized by the commission was not required on the basis of the evidence presented to give adequate assurance that any necessary refunds would be made.

[3] It is not clear from the testimony how the amount of the liability of the hospital for refunds to Blue Cross would have been affected by this discount arrangement. If the provision for the discount were applicable only to the charges as billed in accordance with the hospital's proposed budget and were inapplicable to the rates as established by the commission, there would be a substantial reduction in this potential liability. The failure of the commission to request a further articulation on this point makes it impossible to ascertain what reliance the court placed upon this testimony in determining that a 20 percent escrow was adequate.

[4] The potential liability of the hospital for refunds to commercial insurers would not differ essentially from its liability to self-payers. The court might have concluded, however, that these institutional payers, by virtue of their ongoing indebtedess to the hospital as a result of their continuing business relationship, required less protections in the form of an escrow than individual self-payers.

The commission argues also that the effect of the stays granted in both the 1984 and 1985 budget appeals, as well as the delays incidental to a final resolution of them, have seriously undermined the commission's regulatory authority. The basis for this claim is that the failure of the hospital to reduce its expenses to the level approved by the commission by curtailing its staff and services will increase the hardship entailed in the event that compliance with the commission's orders is ultimately required. While we recognize that the delay in the implementation of the order of the commission does detract from its effectiveness, this consideration must be balanced against the inequity of compelling the hospital to make staff and service reductions which may be found after judicial review to have been unwarranted. Given the large discretion vested in the trial courts in such matters, we cannot say that the delay in implementation of the commission's order, if it is ultimately upheld, necessarily outweighs all the other considerations involved.

There is no error.

In this opinion the other judges concurred.