[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
TEMPORARY INJUNCTION
This case was originally filed on June 24, 1991, at which time the plaintiff was granted an ex-parte temporary injunction.
The ex-parte temporary injunction addressed the proposal by the defendant to close Fire Companies 9 and 10. The court, upon consideration of the plaintiffs' affidavits in support of such application and counter affidavits provided by defendants, granted an injunction prohibiting the defendants from implementing the plan to close Fire Companies 9 and 10.
The matter was continued to July 8, 1991 for a show cause hearing on the temporary injunction. The parties, after submitting evidence on July 8, 1991, agreed to continue the injunction and hearing date until July 12, 1991.
The City, on July 8, 1991, indicated its intention to revise the plan to close Fire Companies 9 and 10. The City submitted to the court on July 11, 1991 a new plan to essentially close Fire Companies 9 and 7, rather than Fire Companies 9 and 10.
The Union reiterated its objection to the plan as well and orally urged the court to enjoin any closures.
The parties were heard on July 12, 1991. At the conclusion of the hearing, the court continued the original injunction until such time as it issued its decision on the temporary injunction application, but not later than July 20, 1991.
The plaintiff firefighters' union and defendant City are parties to a collective bargaining agreement which contains a staffing or manning clause, which can not be changed without negotiations. Pursuant to the Municipal Employee Relations Act [Connecticut General Statutes 7-470 et seq.], such negotiations are subject to arbitration if voluntary agreement has not been reached by the parties.
The City did not negotiate with the Union. The Union opposes the closings and seeks to exercise its right to negotiate fully over the closings.
The court believes that the City has breached its collective bargaining agreement by proposing to revise the agreed staffing CT Page 6384 levels without negotiating with the firefighters' union.
The initial ex-parte order was based on the determination that a breach of contract had occurred, and a determination that closing Engine Companies 9 and 10 would result in a real and imminent risk to the safety of Waterbury firefighters. The safety finding was based on uncontraverted assertions. The Union has also raised the issue of public safety, but does not have the standing to assert such interests. Accordingly, the issue of public safety is not before the court.
The court has, with the benefit of the evidence presented on July 8 and July 12, 1991, reconsidered its findings as to contractual breach and the threat to the safety of the workers. The preliminary finding of contractual breach remains unchanged.
It is critical for the court to consider the safety issue, as the extraordinary relief of injunction is only available if the applicant has no adequate remedy at law. Griffin Hospital v. Comm. on Hospital Health Care, 196 Conn. 451 (1985).
The plaintiff firefighters' union has a remedy of grievance arbitration which can ultimately vindicate their contractual rights. However, an award of back pay is not an adequate remedy at law where real and imminent risk to the safety of workers is implicated.
Fire suppression is an inherently dangerous occupation. In May of 1990, two members of the plaintiff Union's bargaining unit died in the line of duty.
Courts are empowered to act in the face of real and imminent risks to worker safety; Texaco Independent Union v. Texaco, Inc.,452 F. Sup. 1097 (W.D.Pa. 1978); United Steelworkers of America, AFL-CIO v. Knox Foundry Mill Machinery, Inc., 319 F. Sup. 636
[W.D.Pa. 1970] even where arbitration is available as a remedy.
Acting Fire Chief Byington on June 17, 1991 indicated the closings of Engine Companies 9 and 10 "would seriously jeopardize the lives of the citizens of Waterbury as well as health and safety of our department members". The issuance of the ex-parte injunction was strongly influenced by this declaration.
The Chief, on July 12, 1991, indicated that the safety of the firefighters would not be substantially effected by the closings of Engine Companies 9 and 7. This opinion was subject to a caveat that appropriate planning and training would be implemented, before such closings were effective.
This court is not the proper authority to manage the CT Page 6385 Waterbury Fire Department, or to dictate the allocation by the City of Waterbury of its tax revenues.
The court, however, is the proper authority to exercise its equitable powers to protect the rights of persons who petition before it.
The court will thus issue a Temporary Injunction for a period of time not to exceed 90 days and continue this case until September 22, 1991.
The Temporary Injunction orders as follows:
The defendants, The City of Waterbury, and The Honourable Joseph Santopietro are enjoined and required under penalty of law, to refrain from closing any fire companies until such time as the City of Waterbury's Fire Chief or Acting Fire Chief certifies in writing under oath to the court that any closings of fire companies will not constitute a substantial risk to the health and safety of the Waterbury firefighters; and that such closings have been preceeded by appropriate planning and training.
McWEENY, J.