[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION AS TO PLAINTIFFS' STANDING AND MOTION FOR A TEMPORARY INJUNCTION
FACTS
The plaintiffs are eleven members of the "Fair Haven Inclusion Committee", hereinafter referred to as the "Committee". The purported purpose of the Committee is to assure "that those persons who reside in the Fair Haven community are permitted to participate in important public decisions affecting their neighborhood and lives and of assuring the preservation of the racial, ethnic and economic diversity of their neighborhood." CT Page 6562
The defendant Life Haven, Inc. is a Connecticut non-stock, non-profit organization presently operating a shelter for women and children. The shelter is leased for 25 years from St. Francis R.C. Church (hereinafter, the "Church"), hence its status as a defendant. The other defendants are the Connecticut Commissioners of Human Resources and Income Maintenance (the "state defendants"), and the City of New Haven Director of Welfare and Administrator of Human Resources, (the "municipal defendants").
In a single count complaint, the plaintiffs seek temporary and permanent injunctions which, in effect, would close down the operation of the shelter. The basis for this action is that Life Haven has operated in a discriminatory fashion in that its Board of Trustees is made up of all whites, none of whom reside in the area of the shelter. It is further alleged that tax dollars of the city and state are being utilized to subsidize a religious institution, the church, to permit Life Haven to continue its discriminatory practices.
The defendants have moved to dismiss the action, alleging the plaintiffs lack standing to bring and sustain the action. The Court heard evidence on these motions to dismiss and on the plaintiffs' motion for a temporary injunction.
 I.
As indicated above, the plaintiffs' Amended Complaint is in one count, thereby rendering it difficult to separate the claims and determine the issues of standing. Further, while the plaintiffs seeks to terminate the shelter operation through its prayers for temporary and permanent injunctions, counsel for the plaintiffs stated that it was "not the purpose to drive people into the streets, but to make unconstitutional expenses constitutional." This suggests that the plaintiffs are not so much concerned about the expenditures made and to be made as they are concerned that the process has proceeded and will proceed in their absence.
This "lack of participation" grievance is bound up in the plaintiffs' claims that they have standing to force a non-profit, non-stock corporation to adhere to the demands that they be placed on the Life Haven governing body. To give this otherwise dubious demand respectability, the plaintiffs have alleged that Life Haven has operated in a discriminatory manner, barring "minorities" from membership and operating a "for whites only" closed circle.
Witnesses for Life Haven substantially rebutted the plaintiffs' allegations of discrimination and instead described a CT Page 6563 group of hard working unpaid volunteers who started in 1984 with an idea to house pregnant teenagers. During its existence, Life Haven members have included a Black female who was a trustee for three years and a Hispanic female who left to join another community board. Other prominent Blacks and Hispanics were approached to join the group. On at least two occasions in its turbulent history, Life Haven was faced with the prospects of terminating its existence because of funding losses, and the membership was totally involved in salvaging their programs. Their efforts were always centered in the Fair Haven area where they are at the present time.
It is basic law that the actions of a private corporation cannot be curtailed based upon a violation of the Fourteenth Amendment unless those actions can be characterized as "state actions." Lockwood v. Killian, 172 Conn. 496, 501 (1977).
The plaintiffs offered no evidence that state action exists in the present circumstance. In Hadges v. Yonkers Racing Corp.,733 F. Sup. 686, 690 (S.D.N.Y. 1990), the United States Second Circuit Court adopted two tests to apply in determining the question of state action. The tests require the challenger to demonstrate a close nexus or a symbiotic relationship between the City of New Haven and Life Haven or between the State of Connecticut and Life Haven. Neither entity had a voice in Life Haven's affairs, directed its actions, appointed its governing body or controlled it. There is nothing in the relationship to suggest control or involvement in Life Haven's activities.
Finally, after hearing the parties on this issue, this Court does not find that Life Haven board members acted in a discriminatory fashion or practiced discrimination in the course of their activities on behalf of Life Haven. Much of their energy and time had to be devoted to surviving, leaving little opportunity to fine tune the organization.
 II.
The plaintiffs' claims under 1983 1988 of the United States Code do not survive the examination utilized above. In the absence of discrimination, there is nothing to remedy. In addition, there has been no showing that the defendants or any one of them was acting under "color of state law."
A party must prove he was deprived of a right protected by the Constitution or Federal law and that the defendant acted under color of law. Adickes v. S.H. Kress Co., 398 U.S. 144,150 (1970).
III. CT Page 6564
It is a very close call as to whether the plaintiffs have standing to bring this action under the establishment clause. They do not have standing as municipal taxpayers since no city money has been identified as flowing to the church. However, they allege they are state taxpayers and the bulk of the expended funds came from the state.
Drawing an analogy between this case and Annunzeato v. New Haven Board of Aldermen, 555 F. Sup. 427 (D.Conn. 1982), the Court concludes that the plaintiffs have standing. In that case, municipal money was in question and the court held that only municipal taxpayers had standing to sue in that they would suffer a direct injury in the form of a tax burden. Those claiming to be "citizens" and "parents" did not enjoy standing.
Here, the plaintiffs as state taxpayers may suffer the direct injury of a tax burden.
The Court notes in passing that the evidence heard in connection with these motions does not establish that tax money has been and is being used to assist a religious organization.
 IV.
The final issue to be determined at this juncture of the case is that of the plaintiffs' motion for a temporary injunction.
Our Supreme Court has stated the considerations the trial court must evaluate in rendering a decision on a temporary injunction. ". . . the court is called upon to balance the results which may be caused to one party or the other, and if it appears that to deny or dissolve it may result in great harm to the plaintiff and little to the defendant, the Court may well exercise its discretion in favor of granting or continuing it, unless indeed, it is very clear that the plaintiff is without legal right." (Emphasis in text). Griffin Hospital v. Commission on Hospitals Health Ave., 196 Conn. 451, 457 (1985), citing Olcott v. Pendelton, 128 Conn. 292, 295 (1941).
The Court goes on to say "This criterion necessarily requires consideration of the probable outcome of the litigation." Id. at 457.
Having heard the parties for several hours and cognizant of the requirements of the Connecticut cases, it is the conclusion of this Court that the plaintiffs' motion for a temporary injunction should be denied. CT Page 6565
Shutting down the shelter will render 40 people homeless, including 17 children. The funds expended to renovate the facility will have been wanted. Additional funds will be required to rectify the homeless status of the 40 inhabitants, thus exacerbating the considerable budgetary problems of the defendants State and City of New Haven. The defendant St. Francis will be deprived of the income from its building and of the benefits of its contract, and the eight year effort of the Life Haven board will go for naught. By contrast, the plaintiff will apparently have achieved some satisfaction for prevailing.
The plaintiff has demonstrated no irreparable harm it will suffer if the motion is denied, nor does the Court deem it likely the plaintiff will prevail when the matter is ultimately disposed of.
The motion for a temporary injunction is therefore denied.
Anthony V. DeMayo, Judge