[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM DENYING PLAINTIFF'S APPLICATION FOR STAY
The plaintiff, Connecticut Resources Recovery Authority (CRRA) has applied for a stay pending determination of this appeal of the permits for construction of a proposed resources recovery facility in the town of Lisbon, which the defendant commissioner ordered to be issued in his amended final decision dated February 10, 1993. The defendant, Riley Energy Systems of Lisbon Corporation (RESOL), the successful applicant for the permits, opposes the granting of a stay. The defendant commissioner takes no position on that question.
I. STANDARDS FOR A STAY
In Griffin Hospital v. Commissioner on Hospitals Health Care, 196 Conn. 451, 456-461 (1985), the court indicated that the standards for granting a stay in an administrative appeal are similar to those involved in the analogous situation of a temporary injunction to preserve the status quo pending a final determination of a case on the merits. The opinion relies on the articulation of criteria for granting a temporary injunction as stated in Olcott v. Pendleton, 128 Conn. 292, 295 (1941): "In deciding whether it should be granted, or, if granted, whether it should be continued or dissolved, the court is called upon to balance the results which may be caused to one party or the other, and if it appears that to deny or dissolve it may result in great harm to the plaintiff and little to the defendant, the court may well exercise its discretion in favor of granting or continuing it, unless, indeed, it is very clear that the plaintiff is without legal right." The Griffin opinion also refers to the "burden of an applicant to show a reasonable degree of probability of success," the "need to show an irreparable loss unless the status quo is preserved" and the "harm likely to be sustained by other parties as well as the public from preservation of the status quo." Id., 451-56. CT Page 6137
II. HARM TO CRRA
In this case the amended final decision of the commissioner declares that, despite the likelihood of an increase in the amount of recycling, "there will still be a need for approximately 400 tons per day of additional resources recovery capacity by the year 1998 to handle Connecticut's waste." At the hearing on the application for a stay, the testimony indicated that the proposed facility would require approximately twenty-seven months for construction, but it is possible that it could be completed six months earlier. An additional three months would be required to arrange for financing the project. Therefore, the adverse effect upon the operations of CRRA, which may result from a reduction in the supply of solid waste that it presently receives from municipalities that may become customers of RESOL, is not likely to occur before July 1, 1995, approximately two years hence. By that time, this appeal should be finally resolved, both in the trial court and at the appellate level. Accordingly, the court cannot find that any "irreparable harm" is likely to be sustained by CRRA, since a final determination of the merits of the appeal is probable before CRRA will feel the impact of additional competition in the business of waste disposal.
Beyond its interest as a competitor, which is unlikely to be harmed substantially before this appeal is finally determined, CRRA advances the claim that denial of a stay until a final determination of this appeal will have "the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state." General Statutes 22a-19(a). The statute specifically provides that anyone may raise such a claim in any judicial review of a licensing or other proceeding. It points to the large quantities of pollutants that will be produced when the Lisbon facility becomes operational, as alleged in paragraph 14 of its complaint.
It is not clear, however, that the prospective pollution from the Lisbon plant will increase the total quantity of pollutants being generated in Connecticut as a whole. Solid waste that is disposed of in Lisbon would reduce the amount processed at other resource recovery facilities or deposited in landfills in this state, unless the increase in capacity at Lisbon were to result in the importation of larger amounts of refuse from other states. In any event, the feared increase in CT Page 6138 pollution is not likely to occur until after a final determination of this appeal. If the commissioner's decision is flawed so that the permits are found to have been issued illegally, the Lisbon facility will have to cease operating and, accordingly, will never become a source of pollution. General Statutes 22a-208c, 22a-208d(a).
III. HARM TO RESOL
At the hearing on the stay and also before the commissioner, RESOL produced evidence that its agreement for sale of the electric power to be generated by the Lisbon facility would be jeopardized by the issuance of a stay. contract with Connecticut Light Power Company (CLP) will lapse unless the proposed facility is built by July 1, 1996, approximately three years hence. Although CLP rate payers might benefit if the contract with RESOL were cancelled, it is undisputed that RESOL would suffer a loss of $62,000,000 based on the difference between the contract price for electricity and the current cost to CLP of generating the same quantity of power. In addition, testimony was presented at the hearing that permits or approvals obtained from zoning authorities, the U.S. Corps. of Engineers and the State Health Department will expire if there is a long delay in commencing construction. Furthermore, interest rates and costs of construction will probably increase if construction is delayed.
The lapse or revision of the CLP contract would result in a substantial loss to RESOL that might render the Lisbon project financially unfeasible. There is also a risk that some of the necessary permits will expire and may not be renewed. Since a trial court decision will probably not be forthcoming until the fall of 1993, it is likely that an appellate court decision would not be rendered before July 1, 1994. The two years remaining until expiration of the CLP contract on July 1, 1966, barely fits within the estimated time for construction, but there would not be much room for contingencies that frequently occur in constructing a large project.
IV. LIKELIHOOD OF SUCCESS
It is not possible at this stage of the litigation to assess even approximately the probable outcome of this complex case. The plaintiff has alleged eight grounds, pleaded in separate counts of the complaint, each of which would be a basis CT Page 6139 for reversing the decision of the commissioner. Without the benefit of a full hearing and briefs, the court is not prepared to say, with respect to any of them, that "it is very clear that the plaintiff is without legal right." Olcott v. Pendleton, supra, 295. The plaintiff has at least satisfied the minimal requirement of showing "a reasonable degree of probability of success." Griffin Hospital v. Commission on Hospitals and Health Care, supra, 457.
V.
The court has concluded that there is no substantial evidence of any harm to the plaintiff or the public likely to result from a denial of the application for a stay at this time. A final determination of the case will probably be made within a year and within that time none of the events claimed by the plaintiff are likely to materialize.
If RESOL wishes to proceed with the construction of the Lisbon facility before it can be certain of the outcome of the case, it must be prepared to accept the risk of an unfavorable outcome. Any loss or other hardship it may suffer will be the result of its own business judgment if CRRA should prevail. RESOL should, of course, disclose to investors, and others having an interest in this project, the existence of this litigation and the risks involved if the decision of the commissioner should be overturned.
It is ordered that the application of the plaintiff for a stay be denied.
David M. Shea, State Trial Referee