[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, A. A. Constantine a/k/a Al Constantine, d/b/a Greenwich Maritime Associates, a boat dealer, seeks a temporary injunction restraining the defendants, Osprey Boat Company (Osprey), Tim Sims, Wayfarer Yacht Sales, Wayfarer Yacht Corporation and Michael Waters, from terminating or interfering with an alleged exclusive boat dealership between the plaintiff and Osprey. Sims is the principal officer of Osprey and Waters is the principal officer of Wayfayer Yacht Corporation. The court held a hearing for two days and found the following facts.
On September 26, 1995, Osprey, a manufacturer of power boats located in the state of Washington prepared and sent to the plaintiff a "Dealer Territory Agreement," which was described as an "exclusive dealer agreement" to become operative upon the placing of boat orders. The dealer was listed as the Greenwich Maritime Center, and the territory was described as New York City, New Jersey and Connecticut. The duration was the "95/96 model year"[1] and the agreement was continent upon the dealer "maintaining a two boat inventory."
On January 3, 1996, a "dealership agreement" was signed by the plaintiff on behalf of the Greenwich Maritime Associates as the dealer, which referred specifically to the "original plan" to have Greenwich Maritime Center as the dealer. The dealership territory was expanded to include all of New York state and all of New England, except Maine. Another change was with regard to the inventory of two boats, as the dealer agreed to "endeavor to maintain in inventory two (2) current models of Osprey Boats, ordering additional boats as inventory is sold and closed out." There was no mention of the duration of the dealership, and the proposal, which was prepared by the plaintiff, was executed by the plaintiff and by Osprey.
The plaintiff ordered, paid for and received one of the Osprey boats, a 26 foot long cabin model, in late February, 1996, at a cost of approximately $50,000, but did not purchase a second boat that had been ordered. Osprey thereafter wrote the plaintiff that it cost $2,500 to "eat the boat that you could not pay for." CT Page 4667 According to this same communication, the $2,000 deposit that the plaintiff had given Osprey for the second boat was "credited toward your next boat."
Osprey claims that it canceled its agreement with the plaintiff in February of 1996, when the second boat that had been ordered was not paid for. The plaintiff introduced a document he sent to Osprey on April 1, 1996, which was a list of suggested improvements to the Osprey boats that the plaintiff had obtained from a marine engineer in his employ. The plaintiff argues that he would not have bothered to contact Osprey if his dealership had actually been terminated previously. Osprey contends that it receives suggestions, queries and complaints from a variety of sources and feels no obligation to reply thereto.
The plaintiff testified that from April to September, 1996, he had no contact with Osprey and agrees that he did not sell any Osprey boats during that period or place any orders with the manufacturer. The plaintiff denies that he was ever advised, either orally or in writing, that his dealership had been terminated. The plaintiff did not produce any document directed to Osprey inquiring about the status of his dealership, nor did Osprey produce any writing confirming its contention that it had terminated the dealership of the plaintiff in February, 1996.
In mid-September, 1996, the Norwalk Boat Show took place, and Wayfarer Yacht Sales of Camden, Maine, exhibited Osprey boats at that show. On October 1, 1996, the plaintiff began the present action seeking an injunction and damages. The plaintiff requests an order enjoining Osprey and the other defendants from operating in the "exclusive territory of the plaintiff." The plaintiff also requests that Osprey and the other defendants be ordered to turn over to the plaintiff any "leads" and/or customer lists regarding potential purchasers of Osprey boats, whether obtained by Wayfarer Yacht Sales at the Norwalk Boat Show in September, 1996, or in any part of the plaintiff's exclusive dealership territory.
The criteria for the issuance of a temporary injunction under General Statutes § 52-471 et seq. has been set forth in a number of cases. The purpose of a temporary injuction is "to preserve the status quo until the rights of the parties can be determined after a full hearing on the merits." Griffin Hospitalv. Commission on Hospitals Health Care, 196 Conn. 451, 457,493 A.2d 229 (1985). The applicant for a temporary injunction has the burden of showing "a reasonable degree of probability of CT Page 4668 success." Id. In addition, a court must "balance the results which may be caused to one party or the other." Id. "The need to show an irreparable loss unless the status quo is preserved has also been often mentioned." Id., 458. According to Branch v.Occhionero, 239 Conn. 199, 207, 681 A.2d 306 (1996): "[a] party seeing injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." (Internal quotation marks omitted.)
The dissent in an Appellate Court decision summarized the criteria for the issuance of a temporary injunction as follows: "the plaintiff must establish that protectable interests are at stake, that it will prevail, to a reasonable certainty, subsequent to final hearing on its application for permanent injunction, and also irreparable injury and lack of an adequate remedy at law. . . . The principal purpose of such an injuction is to preserve the status quo until the rights of the parties can be finally determined after a hearing on the merits. . . . In deciding whether it should be granted . . . the court is called upon to balance the results which may be caused to one party or the other, and if it appears that to deny . . . it may result in great harm to the plaintiff and little to the defendant, the court may well exercise its discretion in favor of granting . . . it, unless indeed, it is very clear that the plaintiff is without legal right. . . . The court must consider the probable outcome of the litigation, and whether an irreparable loss will result unless the status quo is preserved." (Citations omitted; internal quotation marks omitted.) Rhode Island Hospital Trust NationalBank v. Trust, 25 Conn. App. 28, 39-40, 592 A.2d 417 (1991) (Foti, J., dissenting).
The facts recited previously lead the court to the following conclusions: (1) the "probable outcome" of this litigation will favor the defendants; (2) the plaintiff will not suffer "irreparable loss" if a temporary injunction does not issue; and (3) in "balancing the harm" that may ensue to the respective parties if a temporary injunction is issued, the defendants would suffer more harm. Regarding the outcome of the case, the defendants presented a plausible argument that the plaintiff ordered a second boat for approximately $48,000, that it was built by Osprey to the plaintiff's specifications and was ready to be shipped in February, 1996, but that the plaintiff refused to go ahead with the sale, which in turn caused Osprey to terminate its dealership arrangement with the plaintiff. With regard to the relationship between the first dealership CT Page 4669 arrangement and the second one of January 3, 1996, which did not refer to the duration of the dealership, the defendants make a plausible argument that the one model year provision contained in the first document continued in force, and that the dealership thus came to an end in August, 1996, even if it had not been effectively terminated prior thereto. Moreover, the plaintiff may be hard-pressed to show that he "endeavor[ed] to maintain in inventory two current models," which was a term of the dealership arrangement.
As to the necessity of demonstrating irreparable harm, the plaintiff will have a full opportunity at a hearing on the merits to present evidence regarding any claimed monetary damages, including profits by Wayfarer Yacht Sales at the Norwalk Boat Show resulting from its display of Osprey boats. Thus, the plaintiff has an adequate remedy at law. Also, evidence was presented that within a month after the Norwalk Boat Show, the plaintiff was exhibiting a boat competing with the Osprey at another boat show on the east coast.
Finally, there would be more harm caused to the defendant Osprey if it was ordered to reinstate its dealership arrangement with the plaintiff, than the plaintiff would suffer by waiting until a hearing on the merits of a permanent injunction can be scheduled. Ordering the defendant Wayfarer Yacht Sales to turn over its leads and customer list at this time would enable the plaintiff in this application for a temporary injunction to achieve the very result he seeks from this lawsuit without having to prove its case in a full trial.
Hence, for any one or more of the above reasons, the plaintiff's application for a temporary injunction is denied.
So Ordered.
Dated at Stamford, Connecticut, this 22nd day of April, 1997.
William B. Lewis, Judge