[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON APPLICATION FOR TEMPORARY INJUNCTION OF PAVARINI CONSTRUCTION CO., INC.
In the above-captioned action, the plaintiff, Connecticut Concrete Construction Co., seeks to recover the costs of its performance of construction activities related to an ice arena in Danbury. The plaintiff named as defendants the City of Danbury, ARC IceSports Danbury, Inc, ("ARC"), with whom the city had contracted for the construction of the arena, and a number of contractors and subcontractors who had filed mechanics liens alleging nonpayment for services performed on the project. Pavarini Construction Co., Inc., ("Pavarini") one of the defendants, has filed a cross claim seeking to foreclose its mechanic's lien and seeking damages for unjust enrichment/quantum merit against the City and ARC. Pavarini also alleges that the City is liable for contract damages. Pavarini seeks, at Count Four of its crossclaim, the establishment of a constructive trust to preserve in trust for the benefit of contractors that have already rendered services an escrow fund that was part of the ARC transaction. Additionally, Pavarini seeks to quiet title to the property.
On July 19, 2000, Pavarini filed an application for a temporary injunction. In that application, Pavarini seeks to enjoin the City of Danbury from making expenditures from the escrow fund for any purpose other than payment of parties that have already performed work on the project.
At a case management conference conducted on July 31, 2000, after this case and Bucon Inc. v. ARC IceSports Danbury, Inc., et al., X01 CV 99 0160473, were transferred to the complex litigation docket, Pavarini agreed to suspend its pursuit of its application, but reserved the right to proceed. On September 20, 2000, Pavarini filed a request for adjudication, and the court scheduled a hearing on the application for September 30, 2000.
At the hearing, the only evidence presented by Pavarini was Exhibit B, which includes the Contract for Sale of Land for Private Redevelopment between the City of Danbury, Connecticut and ARC Danbury, Inc., executed in November and December of 1997; Exhibit C, which includes a quitclaim deed by which the City transferred the site of the arena to ARC Danbury, Inc. for $1.00; and an oral stipulation by counsel for the City, made in open court in the presence of the mayor of Danbury, that the City did not CT Page 12177 take the position in this case that any judgment recovered in this action could be satisfied only from the escrow fund at issue, but that the general fund of the City would be answerable for the amount of any monetary recovery. Pavarini presented argument concerning other allegations, but it failed to present evidence at the hearing to support its arguments.
Standard for adjudication
In order to obtain preliminary injunctive relief, a party must establish to a reasonable degree of probability that he will ultimately prevail on the merits and that the denial of such relief may result in greater harm to the plaintiff than will result to the defendant from granting relief. Griffin Hospital v. Commission on Hospitals and HealthCare, 196 Conn. 451, 457 (1985), citing Olcott v. Pendleton, 128 Conn. 292,295 (1941).
Discussion
Pavarini claims that it demonstrated a likelihood of success on the merits of its application for injunctive relief against expenditures from the escrow fund on the basis of some provisions in the Contract (Exhibit B), specifically, a provision at Sec. 7(e) which states: "The release of the funds shall be applied and/or used by the agency in accordance wit the provisions of this Agreement." Section 18E of the Contract further provides, however, that "[f]ollowing proper notice of breach and default and the expiration of applicable cure periods . . . the [City] may, at its option, ultilize all or any part of the balance in the account . . . to pay for any and all work necessary to complete the Improvements and/or cure the Redeveloper's default . . . and all costs associated with curing such default (including but not limited to reasonable attorney's fees). . . . If the Agency chooses to withdraw funds from the account, the monies so withdrawn shall be used solely for the purposes set forth in this paragraph (which purposes include bi, it are not limited to the right to discharge of liens that may exist on the Property)."
Pavarini asserts that the City should be restricted to using the escrow funds to pay contractors that have already filed liens. The plain words of the contract permit the City to use the fund for additional purposes. It appears that the City has a legal right to use the funds for any of the purposes authorized in the contract, and it has an interest in exercising that right in its own discretion in order to aid its effort to complete the construction of the arena and cure any default by ARC.
Pavarini's interest is in having funds available to meet any recovery against ARC or the City. The stipulation by the City set forth above CT Page 12178 defeats any claim that funds will not be available to pay a recovery against the City if the funds in the escrow account are spent.
Pavarini asserts that ARC, unlike the City, has no other assets, and that any recovery against ARC can only be collected from the escrow. Pavarini did not, however, introduce any evidence to establish that ARC is without assets. Additionally, the terms of the contract provide that the escrow agent must release the escrow funds to the City if ARC is in default. Pavarini alleges in its cross claim that "upon information and belief on or after June 6, 2000, after receipt of notice of Default from the City of Danbury, the Escrow Agent transferred approximately $1.8 million dollars ($1,800,000.00) of designated construction funds to the City of Danbury which the City of Danbury currently holds." (Para. 53) By the terms of the contract, it appears that ARC has no right of access to the escrow funds after the City has declared a breach. Accordingly, Pavarini has failed to show a likelihood of success on the merits of its claim that the escrow fund would be available to ARC to meet its obligations to contractors and subcontractors after a default.
Pavarini has failed to show harm to its legal interests that is weightier than the harm of the proposed injunction to the City's ability to use the escrow funds to complete the project.
Conclusion
Pavarini has failed to establish, on the limited evidence presented, a likelihood of success on the merits of its claims concerning the escrow fund. It has also failed to demonstrate that the balance of harm is greater to its interests than to the City's from the use by the City of the escrowed funds for the completion of the project. The application for a temporary injunction by Pavarini Construction Co., Inc. is denied.
Beverly J. Hodgson Judge of the Superior Court