[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO TERMINATE AUTOMATIC STAY
This Court entered judgment on this contested foreclosure matter by Memorandum of Decision dated January 24, 2001, filed January 25, 2001. In that decision, the Court entered judgment of foreclosure by sale for the plaintiff and set a sale date of March 17, 2001. The defendant, Pauline Balnius Boyer, (hereinafter "defendant") filed an appeal to the Appellate Court on February 14, 2001. Prior to judgment being entered, the plaintiff filed a Motion to Terminate Automatic Stay dated December 15, 2000, and filed December 18, 2000. The plaintiff submitted a memorandum with his motion. The defendant did not.
In its decision the Court found the fair market value of the premises at $245,000 based upon a stipulation of the parties. The Court also found CT Page 3132-eq the debt at $226,929.50 as of January 24, 2001.
There are presently the following liens against the subject premises:
 1. Plaintiff's debt .................................. $226,929.50 2. Taxes to the Town of South Windsor (plaintiff's Exhibit 2) ........................... $62,056.78 3. Judgment liens .................................... $5,414.64 4. IRS liens ......................................... $22,400.00 TOTAL .................................................. $316,795.92
Less value of property — $245,000.00
NEGATIVE EQUITY ........................................ $71,795.92
In addition, interest is running on the mortgage judgment, taxes, etc., at $78/day:
Oral argument was held before this Court on February 27, 2001, at which counsel for the plaintiff and defendant were present. The Court makes the following findings:
 1. CPB Sec. 61-11(c) sets out the criteria for termination of stay. It provides, inter-alia, that "If the judge who tried the case is of the opinion that (1) an extension to appeal is sought or the appeal is taken only for delay or (2) the due administration of justice so requires, the judge may at any time, upon motion and hearing or sua sponte, order that the stay be terminated". Emphasis added. The plaintiff has cited Griffin Hospital v. Commission on Hospitals and Health Care, 196 Conn. 451, 460, 493 A.2d 229 (1985), and the defendant has cited Pospisil v. Pospisil, 1999 WL 130595, a Superior Court case which cites Griffin Hospital supra. Both cases say that "principals pertinent to the due administration of justice' include: (1) the likelihood that the defendant will prevail on appeal; (2) the irreparability of the injury to be suffered from the execution of the judgment; (3) the effect of the stay upon the other parties to the proceedings; and (4) the public interest involved."
 2. This case is an equitable action in which the CT Page 3132-er Court should use a balancing test in order to make a decision.
 3. As to the likelihood that the appellant will prevail, this Court believes it to be slight.
 4. The Preliminary Statement of Issues dated February 14, 2001 by the appellant demonstrates that the defendant is unlikely to win on appeal. This Court based its decision on two special defenses filed by the defendant. 1) The 1987 mortgage was modified on or about October 26, 1990, and it was the defendant's claim that the plaintiff, at the time of modification, failed to provide the defendant with the disclosures required under both the state and federal Truth-in-Lending Acts (hereinafter "TILA"). The Court, in its decision, made a finding that the plaintiff was not a creditor subject to the TILA. The Court also found that the 1990 modification was not a refinance requiring disclosures under the TILA.
 5. A review of the Preliminary Statement of Issues shows that the defendant has not even questioned the Court's decision that the plaintiff was not a creditor. In paragraph 1 of the Preliminary Statement of Issues, the defendant addresses only the Court's decision that the modification did not constitute a refinance. If the Court was correct in finding that the plaintiff was not a creditor under the TILA, that exempts him from the TILA whether or not it was a refinance. The burden of proof was on the defendant to prove the special defense that the plaintiff was a creditor subject to the TILA. The defendant, at trial, presented no evidence. The only testimony was that of the plaintiff's wife who testified as to the number of mortgages made by the plaintiff. The Court believed the plaintiff's wife and found that the plaintiff did not give a sufficient number of mortgages to qualify as a "creditor" under the Act. Defendant may disagree with the Court's assessment of the credibility of Mrs. Garofalo, but that is an issue to be decided by the trier of CT Page 3132-es fact. Further, as indicated, the defendant offered no evidence to support her contention that the plaintiff issued enough mortagages to be qualified as a creditor. It was the defendant's burden to do so. This finding by the Court alone was sufficient to exempt him from the requirements of the TILA. Accordingly, whether there was or was not a refinance by itself does not permit the dcfcndant to win on appeal.
 6. The second issue in the Preliminary Statement of Issues is whether the trial Court erred in reaching its conclusion that the defendant did not contest the original mortgage transaction of October 1987. This issue was never brought up at trial, and a review of the defendant's reply brief dated January 5, 2001 page 3 states as follows:
"Defendant has conceded that:
 a) The initial loan of 1987 is an exempt transaction and;
b) That the right of recission has expired".
 Therefore, the second issue raised by the defendant is without foundation
 7. In regard to the irreparability of the injury to be suffered by implementation of the judgment, it should be noted the defendant has no equity in the premises unless, of course, she wins the appeal, and the plaintiff's mortgage is declared totally invalid; which is highly unlikely. She has been unable to pay Town taxes since 1992 which are now approximately $62,000 in arrears. She has made no payment on the mortgage since the first half of 1996. In effect she has been living at the premises since 1992 tax free and since 1996 mortgage free. Whether it is nine years or five years, she has lived at the premises without paying these major charges, and it is inequitable for her to continue to live there under these circumstances. On the other hand, injury will CT Page 3132-et occur to the plaintiff by further delay. As it is, with $62,000 in taxes ahead of him he will not recoup the debt owed to him, and the interest will continue to run at at least $78/day. Taxes will continue to be assessed, and his security will be further eroded.
 8. The effect of the stay will negatively affect a third party, namely the Town of South Windsor. A prompt sale would result in the tax liens being paid without cost to the Town.
 9. As for the public interest involved, a termination of the stay contributes in excess of $62,000 to the Town of South Windsor which would have a positive effect upon the taxpayers of South Windsor.
For all of the foregoing reasons, the Motion to Terminate the Automatic Stay is granted.
Counsel for the defendant indicated that he will file a Motion for Review of this order. Accordingly, the sale date of March 17, 2001 can no longer stand. Judgment is reopened to set a new sale date which is April 14, 2001 at 12:00 noon on the premises. Publication is to be in the Hartford Courant on April 1, 2001 and April 8, 2001. The sign is to be erected on or before March 30, 2001 and the return of appraiser is due by March 30, 2001. All other aspects of the January 24, 2001 judgment shall remain in effect.
Rittenband, JTR