WATERBURY TEACHERS ASSOCIATION *v.* FREEDOM OF
INFORMATION COMMISSION ET AL.
(14860)

PETERS, C. J., BORDEN, NORCOTT, KATZ and PALMER, Js.

Argued March 24—decision released August 2, 1994

*William J. Dolan,* for the appellant (plaintiff).

*Pamela D. Siemon,* with whom, on the brief, was *John J. Cassidy, Jr.,* for the appellees (defendant Marc S. Ryan et al.).

*Athan Mihalakos,* for the appellee (defendant Waterbury board of education committee on grievances).

BORDEN, J. The sole issue of this appeal is whether the denial by the trial court of a stay of a decision of the named defendant, the freedom of information commission (commission),[1] pending the resolution of the plaintiff's administrative appeal from that decision, constituted a final judgment for purposes of appeal. The plaintiff, the Waterbury Teachers Association, appeals upon our grant of certification,[2] from the judgment of

---

[1] The other defendants are the Waterbury board of education committee on grievances, the Waterbury Republican American newspaper, and Marc S. Ryan and James B. Craig, an editorial writer and reporter, respectively, for the newspaper. In the trial court, the board of education committee did not file an appearance. Furthermore, in the trial court only the newspaper, Ryan and Craig opposed the plaintiff's motion for a stay; the commission did not oppose the motion. Moreover, neither the commission nor the board of education committee has participated in this appeal. We refer herein, therefore, to the newspaper, Ryan and Craig as the defendants.

[2] We granted the plaintiff's petition for certification to appeal from the judgment of the Appellate Court, limited to the following issue: "Was the

the Appellate Court. *Waterbury Teachers Assn.* v. *Freedom of Information Commission,* 228 Conn. 904, 634 A.2d 300 (1993). The Appellate Court dismissed, for lack of a final judgment, the plaintiff's appeal from the trial court's decision denying the plaintiff's motion for a stay pending the resolution of the plaintiff's administrative appeal. We affirm the judgment of the Appellate Court.

The facts are undisputed. In May, 1992, the defendants complained to the commission that the board of education committee on grievances (committee) had illegally excluded the defendants from its April 29, 1992 and May 6, 1992 meetings, and that those meetings had not been properly noticed pursuant to General Statutes § 1-21 (a).[3] The committee and the plaintiff, which

trial court's denial of the plaintiff's motion for a stay of the defendant Freedom of Information Commission's decision a final judgment for purposes of appeal to the Appellate Court?" *Waterbury Teachers Assn.* v. *Freedom of Information Commission,* 228 Conn. 904, 634 A.2d 300 (1993).

[3] General Statutes § 1-21 provides in relevant part: "MEETINGS OF GOVERNMENT AGENCIES TO BE PUBLIC. RECORDING OF VOTES. SCHEDULE AND AGENDA OF MEETINGS TO BE FILED. NOTICE OF SPECIAL MEETINGS. EXECUTIVE SESSIONS. (a) The meetings of all public agencies, except executive sessions as defined in subsection (e) of section 1-18a, shall be open to the public. . . . Each such public agency of the state shall file not later than January thirty-first of each year in the office of the secretary of the state the schedule of the regular meetings of such public agency for the ensuing year, except that such provision shall not apply to the general assembly . . . . The chairman or secretary of any such public.agency of any political subdivision of the state shall file, not later than January thirty-first of each year, with the clerk of such subdivision the schedule of regular meetings of such public agency for the ensuing year, and no such meeting of any such public agency shall be held sooner than thirty days after such schedule has been filed. The chief executive officer of any multitown district or agency shall file, not later than January thirty-first of each year, with the clerk of each municipal member of such district or agency, the schedule of regular meetings of such public agency for the ensuing year, and no such meeting of any such public agency shall be held sooner than thirty days after such schedule has been filed. The agenda of the regular meetings of every public agency, except for the general assembly, shall be available to the public and shall be filed, not less than twenty-four hours before the meetings to which they refer, in such agency's regular office or place of busi-

had been made a party to the administrative proceeding, claimed that what had occurred on those two dates constituted "strategy or negotiations with respect to collective bargaining" within the meaning of § 1-18a (b),[4]

ness or, if there is no such office or place of business, in the office of the secretary of the state for any such public agency of the state, in the office of the clerk of such subdivision for any public agency of a political subdivision of the state or in the office of the clerk of each municipal member of any multitown district or agency. . . . Notice of each special meeting of every public agency, except for the general assembly, either house thereof or any committee thereof, shall be given not less than twenty-four hours prior to the time of such meeting by filing a notice of the time and place thereof in the office of the secretary of the state for any such public agency of the state, in the office of the clerk of such subdivision for any public agency of a political subdivision of the state and in the office of the clerk of each municipal member for any multitown district or agency. . . . Such notice shall be given not less than twenty-four hours prior to the time of the special meeting; provided, in case of emergency, except for the general assembly, either house thereof or any committee thereof, any such special meeting may be held without complying with the foregoing requirement for the filing of notice but a copy of the minutes of every such emergency special meeting adequately setting forth the nature of the emergency and the proceedings occurring at such meeting shall be filed with the secretary of the state, the clerk of such political subdivision, or the clerk of each municipal member of such multitown district or agency, as the case may be, not later than seventy-two hours following the holding of such meeting. The notice shall specify the time and place of the special meeting and the business to be transacted. No other business shall be considered at such meetings by such public agency. In addition, such written notice shall be delivered to the usual place of abode of each member of the public agency so that the same is received prior to such special meeting. . . ."

[4] General Statutes § 1-18a provides in relevant part: "DEFINITIONS. . . .

"(b) 'Meeting' means any hearing or other proceeding of a public agency, any convening or assembly of a quorum of a multimember public agency, and any communication by or to a quorum of a multimember public agency, whether in person or by means of electronic equipment, to discuss or act upon a matter over which the public agency has supervision, control, jurisdiction or advisory power. 'Meeting' shall not include: Any meeting of a personnel search committee for executive level employment candidates; any chance meeting, or a social meeting neither planned nor intended for the purpose of discussing matters relating to official business; strategy or negotiations with respect to collective bargaining; a caucus of members of a single political party notwithstanding that such members also constitute a quorum of a public agency; an administrative or staff meeting of a single-member public agency; and communication limited to notice of meetings of any public agency or the agendas thereof. . . ." (Emphasis added.)

and that, therefore, the committee had acted properly. More specifically, the committee argued that the discussion of grievances under a collective bargaining agreement constitutes strategy or negotiations with respect to collective bargaining within the meaning of § 1-18a (b).

After a contested case hearing, the commission rendered its final decision on April 30, 1993. The commission found that, during the sessions at issue: (1) the committee had discussed certain grievances; (2) the committee, in accordance with its usual practice, had identified the grievances by numbers without the use of names or subject matter; (3) a collective bargaining agreement had been in effect; (4) the discussions of the grievances had included inquiries regarding possible violations of the collective bargaining agreement, and also had included the receipt of evidence from witnesses regarding the grievances; and (5) the committee had discussed matters other than strategy or negotiation regarding collective bargaining, particularly when receiving evidence with respect to grievances. On the basis of these findings, the commission concluded that the April and May sessions of the committee had been public meetings within the meaning of § 1-18a (b), and that the committee had violated § 1-21 (a) by failing to give proper notice thereof. The commission issued the following order: "The [committee] shall henceforth strictly comply with the provisions of § 1-21 (a)."

The plaintiff appealed from this decision to the trial court. During the pendency of this appeal, the plaintiff moved, pursuant to General Statutes § 4-183 (f),[5]

[5] General Statutes § 4-183 provides in relevant part: "APPEAL TO SUPERIOR COURT. . . .

"(f) The filing of an appeal shall not, of itself, stay enforcement of an agency decision. An application for a stay may be made to the agency, to the court or to both. Filing of an application with the agency shall not preclude action by the court. A stay, if granted, shall be on appropriate terms."

for a stay of "any proceedings by [the] defendants to enforce the final decision of the [commission] until further order of the court." The trial court, treating the motion for a stay as analogous to a motion for a temporary injunction, applied a four part test. The court determined that, in order for a stay to issue, it must determine that: (1) the plaintiff had no adequate legal remedy; (2) the plaintiff would suffer irreparable injury absent a stay; (3) the plaintiff was likely to prevail on appeal; and (4) the balance of the equities favored a stay. Applying this test, the trial court denied the plaintiff's motion for a stay.

The plaintiff appealed to the Appellate Court from the trial court's denial of a stay. The defendants moved to dismiss the appeal for lack of a final judgment. The Appellate Court granted the motion and dismissed the appeal. This appeal followed.

The plaintiff claims that the denial of the stay by the trial court, though an interlocutory order, is a final judgment for purposes of appeal because "the order or action so concludes the rights of the parties that further proceedings cannot affect them." State v. Curcio, 191 Conn. 27, 31, 463 A.2d 566 (1983).[6] The plaintiff argues that this part of the Curcio test applies because: (1) the effect of the commission's order is to require that grievance hearings be treated as open meetings, at least until the merits of the plaintiff's appeal are determined by the trial court; (2) the plaintiff will thereby be deprived of its right to appeal from the commission's decision regarding grievance hearings held during the period between the commission's order and the trial court's ultimate decision on the merits; and (3) if the plaintiff is not permitted to appeal at this time,

---

[6] The plaintiff does not claim that the trial court's denial of a stay comes within that part of the Curcio doctrine providing that there is a final judgment for purposes of appeal "where the order or action terminates a separate and distinct proceeding." State v. Curcio, supra, 191 Conn. 31.

it "will have been forced to abide by an illegal order during the pendency of its administrative appeal." Thus, the core of the plaintiff's argument is that, as a result of the trial court's decision, the plaintiff will irreparably lose its right to conduct grievance hearings during the pendency of the appeal in private. We are not persuaded that these considerations transform this interlocutory order into a final judgment for purposes of appeal.

It is axiomatic that, except insofar as the constitution bestows upon this court jurisdiction to hear certain cases; see *Fonfarra* v. *Reapportionment Commission*, 222 Conn. 166, 610 A.2d 153 (1992);[7] the subject matter jurisdiction of the Appellate Court and of this court is governed by statute. *Grieco* v. *Zoning Commission*, 226 Conn. 230, 231, 627 A.2d 432 (1993). It is equally axiomatic that, except insofar as the legislature has specifically provided for an interlocutory appeal or other form of interlocutory appellate review; see, e.g., General Statutes § 52-278*l* (prejudgment remedies); General Statutes § 54-63g (petition for review of bail); General Statutes § 51-164x (court closure orders); *State* v. *Ayala,* 222 Conn. 331, 340, 610 A.2d 1162 (1992); appellate jurisdiction is limited to final judgments of the trial court. General Statutes § 52-263;[8] *State* v. *Curcio,* supra, 191 Conn. 30. The doctrine that an interlocutory order may nonetheless

---

[7] Article third, § 6, of the Connecticut constitution, as amended by article twenty-six of the amendments, provides in relevant part: "d. Original jurisdiction is vested in the supreme court to be exercised on the petition of any registered voter whereby said court may compel the commission [convened for decennial reapportionment of electoral districts], by mandamus or otherwise, to perform its duty or to correct any error made in its plan of districting, or said court may take such other action to effectuate the purposes of this article, including the establishing of a plan of districting if the commission fails to file its plan of districting by the thirtieth day of November as said court may deem appropriate."

[8] General Statutes § 52-263 provides in relevant part: "APPEALS FROM SUPERIOR COURT. EXCEPTIONS. Upon the trial of all matters of fact in any

be a "final [judgment] for purposes of appeal"; *State v. Curcio*, supra, 31; is not an exception to but simply an application of the final judgment rule embodied in § 52-263. See footnote 8.

The plaintiff's attempt to bring the trial court's order denying a stay within *Curcio* founders on our further explication of that doctrine in *State v. Longo*, 192 Conn. 85, 91–93, 469 A.2d 1220 (1984). In *Longo*, this court held that the trial court's order denying the defendant's application for youthful offender status was not an appealable final judgment. We so held, moreover, despite the fact that "[o]nce the defendant undergoes a public trial or is detained with the general jail population, his privacy cannot be restored by a subsequent private trial or by subsequent segregation detention." Id., 91.

We held, nonetheless, that the order was interlocutory and did not satisfy the *Curcio* test. "In order to satisfy the second prong of the *Curcio* test the [plaintiff] must do more than show that the trial court's decision threatens [it] with irreparable harm. The [plaintiff] must show that that decision threatens to abrogate a right that [it] *then* holds." (Emphasis in original.) Id., 91. Furthermore, "when a statute vests the trial court with discretion to determine if a particular [party] is to be accorded a certain status, the [party] may not invoke the rights that attend the status as a basis for claiming that the court's decision not to confer that status deprives the [party] of protections to which [it] is entitled. For an interlocutory order to be an appealable final judgment it must threaten the preservation of a right that the [party] already holds. The right itself must exist independently of the order from which the appeal is taken. Where a decision has the effect of not

cause or action in the superior court . . . if either party is aggrieved by the decision of the court . . . he may appeal to the court having jurisdiction from the final judgment of the court . . . ."

granting a particular right, that decision, even if erroneous, does not threaten the [party's] already existing rights." Id., 92–93. Application of these principles of finality of judgments to this case forecloses the plaintiff's claim.

The plaintiff's contention that as a result of the trial court's action it must hold its grievance hearings in public during the pendency of this appeal devolves into a claim of irreparable harm. The plaintiff cannot show that it *now* holds the right to have such hearings conducted in private. That question will be determined by the administrative appeal. As in *Longo,* the right of privacy that the plaintiff asserts in this case does not yet "exist independently of the order from which the appeal is taken." Id.

The conclusion that the trial court's denial of a stay in this case is not a final judgment is consistent, moreover, with prior cases holding that similar claims of privacy rights may be lost pending an appeal. In *Melia* v. *Hartford Fire Ins. Co.,* 202 Conn. 252, 254, 520 A.2d 605 (1987), we held that a trial court order of disclosure and production was not a final judgment for purposes of appeal, despite the defendant's claim that the material ordered to be produced was protected by the attorney-client privilege and the work product doctrine, and that the order therefore fell within the second prong of *Curcio.* We rejected the defendant's argument that the order must be deemed final because its rights would be "inalterably concluded if it must, without appellate review, comply with the order by making the requested documents available to the plaintiff." Id. We recognized that "a remand for a new trial resulting from an erroneous order to disclose information protected by the privilege cannot wholly undo the consequences of its violation . . . ." Id., 257. Nonetheless, we stated: " 'Vindication at the appellate level can seldom regain all that has been lost by an erroneous deter-

mination of a cause in the trial court.' *In re Juvenile Appeal (85-AB),* 195 Conn. 303, 311, 488 A.2d 778 (1985)." Id.

We further noted: "Our concern for the efficient operation of the judicial system, which is the practical consideration behind the policy against piecemeal litigation inherent in the final judgment rule, has induced us to dismiss appeals where statutorily created rights of privacy, no less significant than the right of confidentiality for attorney-client communications, have been at stake. Where those accused of crimes have claimed entitlement to treatment as juveniles or youthful offenders, we have recognized that our decree after a successful appeal from a conviction cannot restore the protection the legislature intended against publicity and other consequences attending an adult criminal proceeding. [*In re Juvenile Appeal (85-AB),* supra, 195 Conn. 311]; *State* v. *Longo,* [supra, 192 Conn. 91]. We have concluded, nevertheless, that the harm caused by delay in the disposition of criminal cases likely to result from allowing interlocutory appeals where trial courts have denied youthful offender or juvenile treatment far outweighs the need to provide additional appellate remedies to implement the legislative purpose more effectively. *In re Juvenile Appeal (85-AB),* supra, 312." Id., 258. In addition, we made clear that the same considerations applied to civil, as well as criminal, cases. Id.

The same reasoning applies to this case. The efficient operation of the judicial system, which depends upon the policy against piecemeal litigation inherent in the final judgment rule, strongly counsels against characterizing a denial of a stay pending appeal as a final judgment for purposes of appeal. Indeed, the plaintiff conceded at oral argument in this court that it was claiming, in essence, that the judicial denial of a stay of any freedom of information commission order requiring disclosure of material or opening of meetings is

always an appealable final judgment. Although the legislature could certainly enlarge appellate review of freedom of information orders, it has not done so in either the Freedom of Information Act or General Statutes § 4-183 (f). See footnote 5.

We have previously analogized the process of granting or denying a stay under § 4-183 pending the outcome of the administrative appeal to the process of granting or denying a temporary injunction to preserve the status quo pending the full hearing on the merits of a case. *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 196 Conn. 451, 457, 493 A.2d 229 (1985). Just as a temporary injunction generally is not a final judgment for purposes of appeal; see *Doublewal Corp.* v. *Toffolon,* 195 Conn. 384, 389, 488 A.2d 444 (1985); the decision on a motion for stay pending appeal pursuant to § 4-183 (f) is not a final judgment for purposes of appeal.

We note the existence of a narrow category of cases in which certain temporary orders have been held to be appealable final judgments because they so conclude the rights of a party that further proceedings could not affect them. See, e.g., *Goodson* v. *State,* 228 Conn. 106, 114, 635 A.2d 285 (1993) (order of reinstatement to employment pending arbitration); *Madigan* v. *Madigan,* 224 Conn. 749, 620 A.2d 1276 (1993) (temporary custody order in dissolution case); *Litvaitis* v. *Litvaitis,* 162 Conn. 540, 548, 295 A.2d 519 (1972) (temporary order of child support in dissolution case); *Hiss* v. *Hiss,* 135 Conn. 333, 336, 64 A.2d 173 (1949) (pendente lite order of support in equitable action for support).

The denial of the plaintiff's motion for a stay in the present case, however, does not fall within this category of cases. First, these precedents are less analagous to the facts of this case than is our law regarding the temporary loss of privacy rights. See, e.g., *Melia*

v. *Hartford Fire Ins. Co.,* supra, 202 Conn. 252. Second, those cases generally involved payments of money that could not be recouped on a subsequent plenary appeal. See, e.g., *Litvaitis* v. *Litvaitis,* supra, 162 Conn. 540. Third, the special circumstances of family cases have persuaded us that there is a compelling need for immediate review of pendente lite visitation orders, which do not involve the payment of money. See, e.g., *Madigan* v. *Madigan,* supra, 224 Conn. 749.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.