[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: APPLICATION FOR TEMPORARYINJUNCTION
Plaintiff has applied to this court for a temporary injunction requesting that his membership as a squash player at Southport Racquet Club (the "Club") be reinstated while the issue of the propriety of the decision to terminate that membership is litigated before this court.
The Plaintiff's Preliminary Memorandum of Law sets forth the following:
THE STANDARD FOR A TEMPORARY INJUNCTION
 A. "Any judge of any court of equitable jurisdiction, may, on motion, grant and enforce a writ of injunction, according to the course of proceedings in equity, in any CT Page 8822 action for equitable relief when the relief is properly demandable . . . Upon granting of the writ, the writ shall be of force until the sitting of the court and its further order thereon unless sooner lawfully dissolved." Conn. Gen. Stat. § 52-471(a).
B. The four part test:
1. The plaintiff has no adequate remedy at law;
2. The plaintiff will suffer irreparable injury;
3. The plaintiff is likely to prevail; and
4. The balance of the equities favors an injunction.
 Griffin Hospital v. Commission on Hospitals and Health Care, 196 Conn. 451, 457 (1985); cf. Waterbury Teachers Assn. v. Freedom of Information Commission, 230 Conn. 441, 446 (1994); see also Rhode Island Hospital Trust Nation Bank v. Trust, 25 Conn. App. 28, 39-40 (1991) (dissent).
Plaintiff's Post-Trial Memorandum of Law would have this court grant plaintiff's request for a temporary injunction on the basis that; (1) plaintiff's conduct which resulted in his dismissal did not amount to anything remotely resembling misconduct and; (2) the Board's action, in terminating his membership, was motivated by personal animosity toward plaintiff because of his prior activities as a dissident shareholder.
The court finds that the Southport Athletic Club, Inc., is a duly authorized and existing Connecticut for-profit stock corporation with its principal place of business in Southport, Connecticut.
The court did rule that the Club is not a private club. New members are not proposed for membership, nor is there a procedure for the Board to vote on new membership. A proposed new member fills in an application form and provides satisfactory evidence that the applicant has the necessary financial means to meet the initiation fee and subsequent dues payments. There was testimony that no one has ever been denied initial membership.
The Club, a full time health club, has approximately twelve CT Page 8823 hundred members. Approximately one hundred and fifty are squash players.
The plaintiff testified that he was an enthusiastic daily player of the "international version of squash". He does not claim to be a professional player nor a ranked amateur. Thus, the action taken by the Board in terminating his membership does not deprive him of his livelihood nor impact his amateur standing. Further, plaintiff testified that he is playing squash in other facilities, albeit not as convenient as the Club.
The basic facts surrounding plaintiff's dismissal are not in dispute; the severity and impact of plaintiff's conduct on Club membership is very much in dispute.
Mr. Tim Taylor, Assistant General manager of the Club, testified to an earlier confrontation that he had with plaintiff regarding a new check-in procedure. A witness to the incident testified that plaintiff got red in the face and out of control. Plaintiff had a history, supported by testimony, that he would adhere to check-in procedures only if the procedure was applied uniformly. It would appear from the testimony that plaintiff was the sole determiner as to the question of uniformity of the application of the regulations.
The incident with Mr. Taylor resulted in the Board terminating plaintiff's membership in the Club. The membership was reinstated, in part by plaintiff threatening legal action, and in part by the Board's desire to give him a second chance.
On June 10, 1995, plaintiff wrote to Southport Racquet Club saying that he was delighted to rejoin the Club, etc. His response, inter alia, contained the following:
 "I will abide by any reasonable Club rules, provided that such rules are equally enforced as to all members. I will continue to be, as I have been without fail, polite to the Club's staff. I will also be, as I have always been, conscientiously civil when I must deal with the Club's management, assuming that management treats me in the same manner in return.
Jim Stutz" CT Page 8824
The test of this resolve manifested itself in an incident that occurred at the Club on October 15, 1994. Plaintiff and a fellow member were playing squash. Shortly before 6:00 p.m., the regular closing time, a young lady staff member, politely advised plaintiff and his fellow player that they should finish their game as she has to close the building at 6:00 p.m.
Plaintiff protested and refused to leave because the Chairman of the Board was playing on an adjacent court and plaintiff suspected that he would not be leaving at 6:00 p.m. The young lady staff member explained to plaintiff that the Chairman had his own key and would let himself out.
The testimony of eye witnesses and those who overheard the fracas would sustain a finding that plaintiff was aggressive, abusive and hostile to a young lady who was attempting to perform her duties. She was the only staff member present at the Club at the time of the incident.
The plaintiff could not accept the fact that a Chairman of the Board of a Club should be entitled to his own key. He was chairman, he needed a key to gain access at odd hours to conduct meetings, inspect the premises, meet with other board members and employees.
The Club has twelve hundred members and daily attendance could be on any given day up to eight hundred members. If everyone had a key there would be chaos.
The plaintiff's claim that he was not given a fair hearing, on October 23, 1994, prior to termination of his membership is without merit. Also, plaintiff declined the Board's offer of a second hearing. (Transcript of October 23, 1994 hearing, page 30.)
The October 26, 1994 termination letter to plaintiff contains the following: "The Board feels the statements presented at the October 23, 1994 hearing described the incident sufficiently and does not feel the need to hold another hearing on October 30. If you disagree and would like another opportunity to present additional facts, please let us know and we will schedule another meeting."
The testimony by plaintiff was that he never requested a second meeting. CT Page 8825
This court finds no credible evidence to support plaintiff's claim that his membership was revoked because he was a dissident shareholder.
The plaintiff has now had two unpleasant encounters with employees. The court sees no reason to permit him to have a third.
The plaintiff's behavior was totally inconsistent with the atmosphere of the Club and injurious to its welfare and legitimate means, warranting termination of his membership.
The court finds that the plaintiff has not met the four part standard for a temporary injunction.
This court is not going to be the vehicle that drives the plaintiff back to the Southport Athletic Club, Inc.
The plaintiff's request for a Temporary Injunction is denied.
RICHARD TOBIN, JUDGE