[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISIONRE: APPLICATION FOR TEMPORARY INJUNCTION
Arlene Savitsky died testate on June 19, 1997, survived by her second husband, the defendant, Allan Savitsky. Prior to their CT Page 3468 marriage, the defendant and Arlene Hechtman Savitsky had executed an antenuptial agreement. On December 4, 1997, the plaintiff, Andrew Hechtman, Administrator for the Estate of Arlene Hechtman Savitsky, filed a three-count complaint against the defendant. In the complaint the plaintiff alleges that the defendant has converted property of the plaintiff for his own use (the first count), been negligent as life tenant of plaintiff's property (second count), and committed waste to property of the plaintiff (third count). The plaintiff seeks equitable relief including a permanent injunction. A hearing for a temporary injunction was held before this court on January 5, 1998.
The granting of a temporary injunction is within the court's discretion. The plaintiff must demonstrate: 1) that he is likely to succeed on the merits of his claim; 2) that without the injunction he will sustain irreparable injury; 3) that the remedy at law is inadequate; and 4) that a balancing of the equities favors the plaintiff. Royce v. Willowbrook Cemetery AssociationInc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 339069 (May 1, 1997, Levin, J.). See alsoWaterbury Teachers Assn. v. Freedom of Information Commission,230 Conn. 441, 446, 645 A.2d 978 (1994).
As a matter of principle, antenuptial agreements are to be construed according to the principles of construction applicable to contracts generally. McHugh v. McHugh, 181 Conn. 482, 491,436 A.2d 8 (1980). In the present case, the antenuptial agreement provided that neither party would be responsible for the other's debts incurred after the marriage. Where there is no ambiguity, however, there is no occasion for construction and the agreement will enforced as its terms direct. Id. The testatrix borrowed money and placed the subject premises up as security for the loan (approximately $31,000). Approximately one-half of the proceeds ($15,000) were thereafter lent to testatrix' son, who as administrator is the plaintiff in this action; approximately one-third (approximately $10,000) was given to her second husband, the defendant in this action, and the balance of the loan was used to effect improvements on the subject premises.
The crucial language in the will, on which both sides rely, is that portion which devises her husband a life estate in the subject property and provides that the defendant shall "pay all expenses relating to the use and maintenance of said house . . . which include, but not limited to taxes, insurance, utilities and repairs." CT Page 3469
The plaintiff claims that it is customary under the law that a life tenant pay the interest on any mortgage on the subject premises and that this requirement of law together with the aforementioned language evinces testatrix' intent that the defendant pay the carrying charges on the loan in question so long as he exercises his life tenancy.
The court disagrees with this analysis. That was not the intent of the testatrix as gleaned from the language of the will. Such intent cannot be found in light of the antenuptial agreement that was in existence at the time of the execution and incorporated by reference into the will.
The home equity loan was a debt incurred by the testatrix subsequent to her marriage to the defendant and the antenuptial agreement. It is clear from that agreement that she did not intend defendant to be responsible for that debt during her lifetime. Furthermore, it is to be presumed that the testatrix was aware of the state of the law with reference to the life tenant's obligation to pay the interest on mortgages on the subject property unless a contrary intent is expressed and that such obligation was in conflict with the intent of the antenuptial agreement. See Case v. Sablone, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 509309 (March 7, 1995, O'Neill, J.) ("There is a principle of Connecticut law which provides `that a party must be presumed to know the contents and meaning of a written instrument' which [the party] accepted"). Consequently, the inclusion of the provisions of the antenuptial agreement into the will by reference without further explanation resolves this conflict and clearly expresses the testatrix' intent that the defendant not be saddled with any part of her obligations regarding this debt, whether it be interest or principal. (Incidentally, the testatrix had been paying the interest on this loan prior to her death out of her own funds. The defendant never contributed to this obligation.)
Moreover, the language referred to in the will is consistent with such an interpretation. The language refers to expenses which are commonly associated with the physical use of property.
Interest on a loan is commonly associated with an expense for the use of money. Consequently, expenses for the use of the house are clearly different than expenses for the use of money. Had the testatrix intended that interest be considered an expense of maintaining the house she could have included it in the CT Page 3470 illustrations she used by way of examples, especially in view of her presumed knowledge of the law at the time she made the will. The word "expenses" generally has no legal significance and depends on the context for its definition and application.Simmons v. Simmons, 99 Conn. 562, 570, 121 A. 819 (1923). InSimmons v. Simmons, the court held that a testamentary provision dealing with expenses included "mortgage interest, taxes, insurance, maintenance and repairs, and perhaps other minor items of the same sort." Id. Such a finding was made in the context of a provision that gave the deceased's wife property to sell in order to explicitly apply the proceeds to the reduction of mortgages and other expenses. In the present case, the explicit language pertaining to the mortgage or mortgage interest is missing.
Finally, the testatrix forgave her son's debt which represented the largest part of her debt. The remainder of that debt represented a gift to her husband and a benefit to both in the form of improvements to the homestead. The portion of the debt loaned to her son was a matter of personal convenience to her and the forgiveness of that debt was also a personal choice of hers; the defendant did not play any role in either action. Therefore, to now conclude from the will that it was testatrix' intent to saddle the defendant with the carrying charges of the house would, in effect, be providing a gift of these charges from the defendant to his stepson. Such an intent is nowhere to be found in the record. Absent unusual circumstances, antenuptial agreements freely and fairly entered into will be honored and enforced by the courts as written. McHugh v. McHugh, supra,181 Conn. 490.
For all of the foregoing reasons it is unlikely that the plaintiff will prevail on the trial of the merits of this case. Accordingly, the plaintiff's application for a temporary injunction hereby DENIED.
MELVILLE, J.