[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Thomas W. Troy, seeks a temporary injunction ordering the defendant, City of Stamford ("city"), to cease prohibiting him from officiating at athletic contests sponsored by the city.
The court held a hearing and found the following facts. The plaintiff has been a full-time employee of the defendant city for the last ten years and has been working as a "Recreation Leader" in the Recreation Services Division. During this period and prior thereto the plaintiff officiated as a referee or umpire at various athletic events, e.g., basketball, softball, in leagues sponsored by the city. The plaintiff is paid directly by the teams and has been earning between $3,000 and $5,000 a year as a referee or umpire in recent years.
In November, 1997, Laurie Albano, the superintendant of the Recreation Services Division, instructed the plaintiff to stop such officiating and umpiring of city-sponsored games due to a potential conflict of interest. Ms. Albano worried that members of the public, who were looking for referee jobs, would believe that the plaintiff had an unfair advantage because he was an employee of the Recreation Services Division, which was in charge of assigning officials to the various games. The plaintiff testified that while he himself did not directly assign referees and umpires to specific games, two other employees who were under him in the chain of command did the actual assignments. One referee or umpire did complain to Recreation Services that he thought that the plaintiff was getting the choice assignments while he was not getting any games to referee.
The plaintiff then sought an opinion from the Stamford Board CT Page 7389 of Ethics. This Board ruled that the plaintiff's refereeing of city-sponsored games did not constitute either "a real or apparent conflict of interest."
In October, 1998, Ms. Albano sent the plaintiff a written directive that he could no longer officiate at athletic contests sponsored by his department, the Recreation Services Division. The directive stated that the plaintiff's actions represented "a practice that [does not] present[s] the proper image that I want the department to have." This directive precipitated the plaintiff's application for a temporary injunction.
The criteria for the issuance of a temporary injunction under General Statutes § 52-471 et seq. has been set forth in a number of cases. The purpose of a temporary injunction is "to preserve the status quo until the rights of the parties can be determined after a full hearing on the merits." Griffin Hospital v.Commission on Hospitals Health Care, 196 Conn. 451, 457,493 A.2d 229 (1985). The applicant for a temporary injunction has the burden of showing "a reasonable degree of probability of success." Id. In addition, a court must "balance the results which may be caused to one party or the other." Id. "The need to show an irreparable loss unless the status quo is preserved has also been often mentioned." Id., 458. "A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." (Internal quotation marks omitted.) Branch v. Occhionero, 239 Conn. 199, 207, 681 A.2d 306
(1996).
According to Waterbury Teachers Association v. Freedom ofInformation Commission, 230 Conn. 441, 446, 645 A.2d 978 (1994), a four part test exists for the issuance of a temporary injunction. "(1) the plaintiff had no adequate legal remedy; (2) the plaintiff would suffer irreparable injury absent a stay; (3) the plaintiff was likely to prevail; and (4) the balance of the equities favored a stay." "In general, a court may, in its discretion, exercise its equitable power to order a temporary injunction pending final determination of the order, upon a proper showing by the movant that if the injunction is not granted he or she will suffer irreparable harm for which there is no adequate remedy at law. . . . In exercising its discretion, the court, in a proper case, may consider and balance the injury complained of with that which will result from interference by injunction." (Citations omitted; internal quotation marks omitted.) Moore v. Ganim, 233 Conn. 557, 569, n. 25, 660 A.2d 742
CT Page 7390 (1995).
The facts recited previously lead the court to the following conclusions: (1) the "probable outcome" of this litigation will favor the defendants; (2) the plaintiff will not suffer "irreparable loss" if a temporary injunction is not issued; and (3) in "balancing the harm" to the respective parties if a temporary injunction is issued, the defendant would suffer more harm.
First, regarding the outcome of the case, although a different result might well ensue after the parties engage in discovery and the plaintiff is able to present his case for a permanent injunction at a full trial on the merits, at this preliminary stage of the proceedings, the court believes that the defendant presented a plausible argument that it will prevail. The plaintiff was not able to point to any specific constitutional or statutory right that has been violated by Ms. Albano on behalf of the defendant city. He has not claimed a violation of a collective bargaining agreement or that his job description gave him a right to officiate at city-sponsored games. It may well be that Superintendent Albano's decision, which was approved by her superiors in the chain of command, is unnecessary, or even wrong. However, the plaintiff has not cited any authority for this court to micro-manage the Recreation Services Division and to reverse a management decision that is found to have been made in good faith.
The plaintiff has suggested that the defendant city is guilty of interfering with his contract. But it does not appear that the plaintiff has a contract with the athletic teams. If the teams need an umpire or referee, they ask the Recreation Services Division to assign such a person to their game. The department then sends an official, who could be the plaintiff or someone else. In addition, the defendant is not preventing the plaintiff from officiating in municipalities other than Stamford, or in games not sponsored by the city.
In terms of the Board of Ethics decision, the plaintiff was never accused of unethical conduct. The issue is whether the city is justified in prohibiting him from conduct that the plaintiff's supervisor believes gives her division an undesirable image in the community.
As to the necessity of demonstrating irreparable harm and the CT Page 7391 lack of an adequate remedy at law, the plaintiff will have a full opportunity at a hearing on the merits to present his claim. In the meantime, the loss of income prior to the full trial seeking a permanent injunction does not constitute irreparable harm since such loss can be readily calculated if necessary.
Finally, the harm caused to the defendant if it was ordered to permit the plaintiff to officiate at city-sponsored contests would be greater than the loss of income which the plaintiff may suffer by waiting until a permanent injunction hearing on the merits. Ordering the defendant to cease interfering with the plaintiff's wish to officiate would enable the plaintiff in this application for a temporary injunction to achieve the very result he seeks from this lawsuit without having to prove his case at trial.
Hence, the plaintiff's application for a temporary injunction is denied.
So Ordered.
Dated at Stamford, Connecticut, this 4th day of June, 1999.
William B. Lewis, Judge