[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S APPLICATION TO CONTINUE A TEMPORARY RESTRAINING ORDER
The plaintiff, the Village for Families and Children, Inc. (the "Village") seeks to continue an ex parte temporary injunction issued by this court, (Teller, J.), on July 27, 1999. The order enjoined the City of Hartford Zoning Board of Appeals (ZBA) from enforcing a cease and desist order it had issued regarding the plaintiffs alternate detention program known as the "Pathway Program". The order was to continue until further order of the court or until after due hearing.
The hearing took place before this court on September 10th and September 16th, 1999.
 Procedural Background
The genesis of this action began when the Director of Licenses and Inspections for the city of Hartford, Abraham Ford, issued a cease and desist order to the Village ordering it to discontinue its juvenile alternate detention program known as the Pathway Program.
Following a hearing before the ZBA on the Village's appeal from the order the ZBA affirmed Mr. Ford's order. The enforcement of the order was stayed pursuant to the zoning regulations because Mr. Ford did not seek to allow the enforcement order to go forward pending an appeal taken by the Village.
Mr. Ford could seek to enforce this order at any time if he felt that continued operation of the Pathway Program would constitute a threat to life and limb. This procedure is permitted by the zoning regulations. The Village has brought this action to enjoin the ZBA from such enforcement pending its appeal.
Fifteen residents of the surrounding neighborhood have intervened alleging that they are aggrieved and have a direct personal interest in upholding the ZBA's decision. CT Page 13948
 Factual Background
The Village, for many years, has operated as an orphanage and children's home. It has been accepting referrals from the Juvenile Court, at least since 1968. In the years of 1982-1983, if offered treatment for children with emotional disorders, although it suspended residential treatment in 1983.
In 1997, the Pathway Program was initiated at the Village. It is the only program of its kind in Hartford. The program is in conjunction with the Community Renewal Team (CRT). CRT has a contract with the Court Support Services agency of the Judicial Branch which refers children who are being detained by the Juvenile Court. All of the boys referred have exhibited delinquent behavior. The program is offered as an alternative to detention. The purpose is to avoid the overcrowded detention facilities and to help the children during their short stay of usually less than thirty days. During that period, a program of educational, recreational and therapeutic activities is provided. Because of the nature and short duration of the services it is not considered to be a rehabilitative program.
The Village has a license for these activities from the State of Connecticut which allows up to ten beds for boys in the program. A residential treatment license is required for rehabilitation services which the Village does not have.
There are presently nine boys enrolled in the program, all of whom are awaiting further proceedings at the Juvenile Court.
If the program is terminated at the Village, another site would have to be found. In the meantime, the children would have to be returned to detention until a new facility was ready and all necessary licenses and contracts obtained. There is no evidence as to how long this would take or how difficult it would be.
Although at the present time the Village's contract with CRT has expired, it continues and will be able to continue operations pending a new contract according to CRT and the Judicial Branch.
The intervening neighbors have asserted their concern that some of the boys assigned to the program will commit crimes in the neighborhood because they are not locked in and may leave at CT Page 13949 anytime. Under such circumstances, however, they will thereupon be returned to detention. To the date of the hearings before this court, there is no evidence that any crimes or vandalism have been reported since the inception of the program in October, 1997.
The Village property is located in an R-8 zone. A rehabilitative service is not a permitted use in an R-8 zone.
It should also be noted that the Village receives funding for this program in the amount of $327,000 per year. If the program is suspended, the funding would stop and may or may not be available if the Village ultimately prevails in its appeal.
The Village claims that unless the status quo is maintained during the pendency of its appeal it will suffer irreparable harm, and that it has demonstrated this to the court. The Village further points out that all of the evidence clearly shows that the City and the intervenors have suffered no harm from this program and have not presented any evidence whatsoever of the likelihood or probability of future harm.
The City and the intervenors, however, claim that the plaintiff has failed to demonstrate that enforcement of the cease and desist order will cause it irreparable harm under Connecticut law and thus must fail in its efforts to achieve injunctive relief. This procedure is statutorily permitted by General Statutes § 8-8 (g) as part of the zoning appeal and § 52-473, the general injunction statute.
 Law and Conclusion
Both the plaintiff and the defendants agree that in order to prevail on its request for an injunction, the Village must demonstrate the following: (1) that it is likely to succeed on the merits of its claim; (2) that without the injunction it will sustain irreparable injury; (3) that the remedy at law is inadequate; and (4) that there must be a balancing in favor of the plaintiff of the equities or harm which may be caused to either party as well as to the public. Waterbury TeachersAssociation v. Freedom of Information Commission, 230 Conn. 441,446 (1994); Griffin Hospital v. Commission on Hospitals HealthCare, 196 Conn. 451, 456-57 (1985).
For the following reasons, this court has concluded that the CT Page 13950 Village has sustained its burden in accordance with the criteria set by Waterbury Teachers Association and Griffin Hospital.
A. The Village is likely to succeed on the merits of its appeal.
Although it is not the province of this court to decide this appeal, it is its function to decide the likelihood of its success.
The court has reason to question the ZBA's application of the zoning regulations when it sustained Mr. Ford's order which was based on his belief that because some of the children were committed felons, and the Program's purpose was rehabilitation (a non-permitted use). The regulations defining "Rehabilitation Home" is one for the "purpose of undertaking a program of social rehabilitation or other similar program." The fact that some of the children are convicted felons, however, is irrelevant.
The court believes that the program is educational, recreational and therapeutic and is not one of rehabilitation. The children's stay is usually under 30 days, and is basically a program to keep them out of detention. Further, if the
Program was one of rehabilitation a different state license would be required. Therefore, the appeal is likely to be sustained.
B. The Village would be irreparably injured and its remedy at law is inadequate.
The harm to the plaintiff must be "immediate, irreparable, great and lasting". Waterbury Teachers Association, supra, 577-78. In the strict sense of these pronouncements by our Supreme Court, it would be difficult for this court to find the harm suffered by the plaintiff to meet this stringent criteria.
However, in more recent years our courts have taken a broader view gleaned from the pronouncements of our Supreme Court.
Trial courts have concluded that financial loss and loss to reputation may be considered. See Attorney Anonymous v. Hartford, Connecticut Superior Court-New Britain Judicial District CV 98-0489758, April 6, 1999 (Graham, J.); Nesbitt v. Satti, Conn. Super., New London Judicial District, CV 98-547261. October 14, 1998 (Hurley, J.); Keeney v. ACME Electroplating, Inc., Conn. CT Page 13951 Super., Hartford-New Britain Judicial District, CV 93-070 4219, October 5, 1993, (O'Neill, J.).
There is ample evidence before this court that a termination of the plaintiffs Pathway Program will generally harm its reputation in the judicial and mental health community. It will immediately result in a loss of income of $327,000 per year. Its ability to conduct such programs will be severely questioned. A remedy at law would be inadequate in this instance.
C. A balancing of the equities between the parties as to the results or harm which may be caused to either of them as well as to the public, weighs in the plaintiffs favor. The broader view alluded to above has been articulated and approved of by our Supreme Court as the "balancing of the equities test" in Griffin, supra, 458 and reaffirmed in Waterbury Teachers Association, supra, 446. This court must consider whether the Village has met the criteria of this test as established by our Supreme Court.
First, the evidence before this court is clear that the defendants have demonstrated no harm whatsoever that can be attributed to the Pathways Program. This court has previously articulated the harm to the Village which can be expected if the program is terminated.
The court can also consider an additional element of harm which the Supreme Court has specifically declared warrants consideration by the trial court.
In Griffin, supra, 458, the court opined that harm likely to be sustained by other parties as well as the public should be considered. It acknowledged that the federal standards which include consideration of the public interest, are among the "equities to be placed on the scales", 458-460.
The termination of the Pathway Program would adversely affect the children placed in detention centers. They would be forced to remain there instead of participating in an educational and therapeutic program.
The interests of the public would also be harmed. The public is concerned with the proper administration of juvenile justice. To derail a beneficial program such as the Pathway Program is contrary to the interests of the public. CT Page 13952
Such harm would be, in the judgment of this court, irreparable to the Village, to the children, and to the public in general.
For the reasons stated above, this court finds that the plaintiff has sustained its burden to satisfy this court that the Temporary Injunction presently in effect should continue until its appeal is heard on its merits or until further order of this court.
Freed, J.