[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Jeffrey Purcell, seeks a temporary injunction ordering the defendant, Raymond Vogt, to cease interfering with the corporation, Surface Techniques, Inc., in which both parties own stock.[1]
The operative complaint in this matter is dated February 15, 2000.[2] The defendant's objection (#116) to the plaintiffs request to amend his complaint was overruled by Judge Ryan on March 6, 2000. This complaint contains eleven counts. In the first count of his complaint, the plaintiff alleges that originally there were three stockholders, each with one-third of the stock, of Surface Techniques, Inc., including the plaintiff, the defendant Vogt, and Frank Stephan; that in 1994, he purchased CT Page 3985 the shares owned by Stephan for $4,142 and hence became the owner of 66.6% of the outstanding shares of Surface Technique, Inc.; that the defendant, in his capacity as president of Surface Technique, Inc., acknowledged this division of ownership by signing a number of tax returns containing this information; that the defendant falsely claims that he owns one-half of the shares of the corporation; that the defendant has engaged in "conversion and commingling of funds, breach of fiduciary duty;" and that, unless given a weekly paycheck, the defendant intends to return to work at the company and attempt to exercise control thereof.
In the second count, the plaintiff alleges that at a special meeting of the shareholders on October 20, 1999, the defendant Vogt refused to resign from his position as president of Surface Techniques, Inc. and that the defendant had engaged in "kiting, embezzlement and or conversion, breach of fiduciary duty."
In the third through the eleventh counts, the plaintiff alleges that the defendant breached his fiduciary duties to the corporation, embezzled funds, used company assets to pay personal debts, engaged in self-dealing, kiting of checks, and conversion.
In his claims for relief, the plaintiff seeks, in addition to monetary damages, punitive and treble damages, and a temporary injunction. The plaintiff seeks the temporary injunction in order to (1) restrain the defendant from entering the corporate office or from handling any property of Surface Technique, Inc.; (2) remove the defendant as a director and officer of the corporation pursuant to General Statutes § 33-743; (3) compel the defendant to return all corporate property; and (4) record on the corporate books the transfer by Mr. Stephan of his one-third share of the corporate stock to the plaintiff.
The court held a hearing and the following facts are found. The plaintiff and the defendant entered into a verbal agreement on or about June 9, 1999, whereby the corporation would pay to the defendant Vogt approximately $1,800 a week, and the defendant would relinquish all control or management of the corporation's affairs, including staying away from the corporation's office. The $1,800 consists of the defendant's salary, health insurance, car expenses, including insurance and gas, and interest payments on a loan that the defendant took out for the benefit of the corporation.
The parties have been complying with this arrangement since CT Page 3986 June, 1999, but the plaintiff wants to repudiate the agreement because he characterizes it as paying the defendant for doing nothing. The plaintiff also claims that he "entered into [it] solely to prevent a thief from stealing more company property."
The criteria for the issuance of a temporary injunction under General Statutes § 52-471 et seq. has been set forth in a number of cases. The purpose of a temporary injunction is "to preserve the status quo until the rights of the parties can be determined after a full hearing on the merits." Griffin Hospital v.Commission on Hospitals Health Care, 196 Conn. 451, 457,493 A.2d 229 (1985). The applicant for a temporary injunction has the burden of showing "a reasonable degree of probability of success." Id. In addition, a court must "balance the results which may be caused to one party or the other." Id. "The need to show an irreparable loss unless the status quo is preserved has also been often mentioned." Id., 458. "A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." (Internal quotation marks omitted.) Branch v. Occhionero, 239 Conn. 199, 207, 681 A.2d 306
(1996).
According to Waterbury Teachers Association v. Freedom ofInformation Commission, 230 Conn. 441, 446, 645 A.2d 978 (1994), a four part test exists for the issuance of a temporary injunction. "(1) the plaintiff had no adequate legal remedy; (2) the plaintiff would suffer irreparable injury absent a stay; (3) the plaintiff was likely to prevail; and (4) the balance of the equities favored a stay." "In general, a court may, in its discretion, exercise its equitable power to order a temporary injunction pending final determination of the order, upon a proper showing by the movant that if the injunction I is not granted he or she will suffer irreparable harm for which there is no adequate remedy at law. . . . In exercising its discretion, the court, in a proper case, may consider and balance the injury complained of with that which will result from interference by injunction." (Citations omitted; internal quotation marks omitted.) Moore v. Ganim, 233 Conn. 557, 569, n. 25, 660 A.2d 742
(1995).
The facts recited previously lead the court to the following conclusions: (1) the "probable outcome" of this litigation will favor the plaintiff; (2) the plaintiff will suffer irreparable loss" if a temporary injunction is not issued; and (3) in "balancing the harm" to the respective parties if a temporary CT Page 3987 injunction is issued, the plaintiff would suffer more harm if such an injunction is not issued.
The primary goal of this injunction is to maintain the status quo until a full hearing on the plaintiff's request for a permanent injunction and other relief can be tried. The status quo is that the defendant is not presently involved in running the corporation and is being paid approximately $1,800 per week in accordance with an agreement between the parties, which the court finds to have been voluntarily and knowingly entered into by two intelligent and sophisticated businessmen. See TallmadgeBros., Inc. v. Iriquois Gas Transmission Systems, 252 Conn. 479,506, ___ A.2d ___ (2000) (analyzing the validity of unambiguous agreements entered into between sophisticated businessmen).
There is no reason to change this arrangement during the pendency of this suit, and so both parties are ordered to maintain the status quo, i.e. the plaintiff will continue to control and manage Surface Techniques, Inc. without interference by the defendant and the company will continue to pay the defendant in accordance with the June, 1999 agreement. Neither party will take any action that prejudices or interferes with the other's ownership interest in the corporation. The court declines to remove the defendant as a director and officer of the corporation at this time because that type of action requires a full trial on the merits. In addition, this court believes that General Statutes § 33-743 envisions a separate procedure for the removal of a director and such removal should not be undertaken subsequent to a hearing concerning a temporary injunction.
Hence, the plaintiff's application for a temporary injunction is granted as follows: (1) the plaintiff will have the exclusive right to manage and control the corporation; (2) both parties will continue to abide by the June, 1999 agreement; (3) the defendant will return to the corporation all corporate records including bank books that are in his possession; and (4) the defendant will not enter into any contracts, take any action, or attempt to bind the corporation in any way, including using any of its credit cards. All of these orders will be in full force and effect until further order of the court.
So Ordered.
Dated at Stamford, Connecticut, this 13th day of April, 2000. CT Page 3988
William B. Lewis, Judge