[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Fairfield House Condominium Association, Inc. (Association), William Dickinson and Maty Dickinson, seek a temporary injunction ordering the defendants, Shim Kwok Chang, Chao-Ming Chang and Roger Chang,[1] to cease violating the Association's rules and by-laws and to refrain from creating a nuisance. The operative complaint is dated May 13, 1999, and contains four counts.
In the first count of the complaint, the plaintiffs allege that they are proceeding against the defendants in accordance with General Statutes § 47-75 (a), which permits a condominium association or any aggrieved unit owner to seek an injunction against any other unit owner who does not "comply with this chapter, the condominium instruments, and the rules and regulations adopted pursuant thereto." The plaintiffs further allege in this count that Roger Chang, who is approximately 15 years old and lives with his parents, Shim Kwok Chang and Chao-Ming Chang, in Unit #3F at the Fairfield House Condominium in Greenwich, runs back and forth, jumps and pounds on the floor and shouts. The plaintiffs describe such conduct as disturbing and disruptive to the other unit owners, "especially in the Unit immediately beneath the Chang Unit, viz., the second floor Dickinson Unit." The plaintiffs further claim that they sent a number of letters or notices to the defendants insisting that such conduct on the part of Roger cease as it was causing both mental and physical harm to the Dickinsons and violating the provisions of the condominium declaration and by-laws that prohibit unreasonable noise. CT Page 8291
In count two, the Dickinsons claim that the value of their condominium unit has been diminished as a result of Roger's conduct. In the third and fourth counts of the complaint, the plaintiffs allege that such conduct on the part of Roger constitutes intentional nuisance and the intentional infliction of emotional distress on the Dickinsons, respectively. In their prayer for relief, the plaintiffs seek a temporary injunction restraining the defendants from violating the condominium instruments and the "common law."
The court held a hearing and the following facts are found. The Changs purchased unit 3F in 1984, and their son Roger has lived in this unit all his life. Roger has been diagnosed as suffering from autism, a developmental disability. The plaintiffs, who purchased their unit for $250,000 in 1998, complain that starting at about 7:00 in the evening, Roger runs about his unit, stomping and shouting. The plaintiffs further allege that Roger continues to make noise while he is showering, and then, when he goes to bed, he moans and makes other noises until well after midnight. Mr. Dickenson, who is retired and not in good health, alleges that this conduct is detrimental to both his physical and mental well-being and has even affected his marriage. The plaintiffs indicate that they are not seeking an order that the Changs sell their unit and move away, nor are they seeking to separate Roger from his family by forcing him to leave unit 3F for some other location. On the contrary, according to their briefs, they simply seek an order that the Changs comply with those provisions of the condominium declaration, by-laws and rules that proscribe annoying and loud conduct and provide that all unit owners are entitled to quiet enjoyment of their premises.
The only issue in these proceedings is whether the plaintiffs have demonstrated that they are entitled to the issuance of a temporary injunction. The criteria for a temporary injunction as authorized by General Statutes § 52-471 et seq. has been set forth in a number of cases. The purpose of a temporary injunction is "to preserve the status quo until the rights of the parties can be determined after a full hearing on the merits." Griffin Hospital v. Commission on Hospitals Health Care, 196 Conn. 451, 457, 493 A.2d 229 (1985). The applicant for a temporary injunction has the burden of showing "a reasonable degree of probability of success." Id. In addition, a court must "balance the results which may be caused to one party or the other." Id. "The need to show an irreparable loss unless the status quo is preserved has also been often mentioned." Id., 458. "A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." (Internal quotation marks omitted.) Branch v.Occhionero, 239 Conn. 199, 207, 681 A.2d 306 (1996). CT Page 8292
According to Waterbury Teachers Association v. Freedom of InformationCommission, 230 Conn. 441, 446, 645 A.2d 978 (1994), a four part test exists for the issuance of a temporary injunction. "(1) the plaintiff had no adequate legal remedy; (2) the plaintiff would suffer irreparable injury absent a stay; (3) the plaintiff was likely to prevail; and (4) the balance of the equities favored a stay." "In general, a court may, in its discretion, exercise its equitable power to order a temporary injunction pending final determination of the order, upon a proper showing by the movant that if the injunction is not granted he or she will suffer irreparable harm for which there is no adequate remedy at law. . . . In exercising its discretion, the court, in a proper case, may consider and balance the injury complained of with that which will result from interference by injunction." (Citations omitted; internal quotation marks omitted.) Moore v. Ganim, 233 Conn. 557, 569, n. 25, 660 A.2d 742
(1995).
The facts recited previously lead the court to the following conclusions: (1) the probable outcome of this litigation will favor the defendants; (2) the defendants will suffer irreparable loss if a temporary injunction were to be issued; and (3) in balancing the harm to the respective parties if a temporary injunction is issued, the defendants would suffer more harm.
First, as to the probable outcome of the litigation. The court heard credible evidence that the Changs are doing the best they can under difficult circumstances. They do not allow anyone to walk around with shoes in their unit. They have installed extra padding and rugs on all portions of their floors to the extent possible. They are working closely with various professionals to ameliorate Roger's conduct. Mrs. Chang testified that she and her sister, who lives with the Changs, spend a lot of time either walking in front of or along the side of Roger to slow him down.
The condominium complex was built around 1957. Small wonder that it is rather noisy. Small wonder too that there are many untoward noises emanating from the various units. More likely than not, the Dickensons are subject to more noise than are other unit owners, and this court is certainly not unsympathetic to their plight. In a perfect world, the Dickensons might live in back-country Greenwich where the only noise is that of marauding deer. The Changs might live in a single-family home on a spacious lot and not have to worry about the Dickensons, the Association, lawyers, fines, injunctions, courts or anything else. Mrs. Chang could use her exercise bicycle which she is refraining from using because of Association rules. Fate, however, has brought the Dickensons and the Changs together in an apartment-like setting, one above the other, and in a relationship that most likely the court system cannot CT Page 8293 ameliorate.
The court is also not unmindful of the testimony that the Association has not received any complaints about Roger from any other current unit owners, including, for instance, from those living above the Changs or adjacent to their unit. In addition, no one has asserted that Roger has committed any violence to anyone's person or property or threatened anyone. It is clear that that neither Roger or his parents intend to disturb their neighbors, and his conduct does not rise to the level of a nuisance.
As to the concept of irreparable loss, ostensibly the plaintiffs simply seek a court order that the Changs obey the rules and regulations of their condominium. One wonders what such an order would really accomplish. Will the plaintiffs soon be back in court claiming a violation of the temporary injunction? The inevitable result will be a request that an order issue requiring the Changs to sell their unit and move away, all in the context of a temporary injunction. The defendants would indeed suffer an irreparable loss if such an order was issued either now, or later as a result of a contempt proceeding. This same reasoning is equally applicable to the third aspect of a temporary injunction, i.e., balancing the harm to the respective parties. Moreover, the legality of any order that a unit owner is obliged to sell his unit is suspect in view of various federal and state statutes protecting the disabled.
Furthermore, the denial of the requested injunction will maintain the status quo until a full hearing on the plaintiffs' request for a permanent injunction and other relief can be tried. The status quo at this point is that the Changs will continue to reside in the unit they own and will continue to do their best with their son. Furthermore, at least at this stage of the case, the plaintiffs do have an adequate remedy at law, another reason to deny their application for a temporary injunction. The plaintiff Association has the right to levy fines on conduct violating its by-laws and rules. Finally, the plaintiffs themselves, in their complaint, sought compensatory damages.
For all of the above reasons, the plaintiffs' application for a temporary injunction is denied.
So Ordered.
Dated at Stamford, Connecticut, this 13th day of July, 2000.
William B. Lewis, Judge
CT Page 8294