[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
This matter has come before the court on an application for temporary injunction. The plaintiff, Wendell Harp, seeks a restraining order of the court enjoining the defendants City of New Haven and New Haven Board of Education from exercising the power of eminent domain over two parcels of real estate owned by Harp at 84-86 and 88 James Street, New Haven, Connecticut.
It is the plaintiffs claim that the exercise of the power of eminent domain by the defendants as to these two properties would be unlawful in that the defendants have failed to negotiate in good faith with Harp for the acquisition of the property, in violation of General Statutes § 46-8. The defendants have denied these assertions and further claim that the eminent domain proceedings contemplated are being pursued under General Statutes § 46-5, not § 46-8. Further, the defendants assert that the plaintiff has not satisfied the legal criteria for the granting of a temporary injunction.
A hearing was held on this matter on March 25, 2002. Evidence was taken and briefs were submitted to the court for a decision on the merits of the plaintiffs claim. The court finds the following facts. The plaintiff purchased the property at issue in 1987 or 1988. On November 14, 1988, he placed an open-end mortgage on each property. The 88 James Street property was mortgaged for $192,000.00 and 84-86 James Street was mortgaged for $156,000.00. Harp renovated the properties and has been receiving rental income from them, one a 3 family unit and the other a 4 family unit. Harp reports a positive cash flow from both of these properties.
In February, 2000 the City of New Haven designated the locale in which these properties are situated as the site for the construction of a new school. Public hearings were held on the proposed projects. In July, 2000, Harp received notice that the New Haven Public Schools wished to meet with him to discuss acquisition of the sites. On August 10, 2000 by certified mail the New Haven School Construction Program Manager sent Harp a request for authorization to enter the properties for soil sample environmental studies and property line surveys. In September, 2001, the School Property Acquisition Coordinator sought access to the properties for its appraisers. The plaintiff responded with access dates and times making the properties available for inspection in October, 2001. Those inspections were conducted. Negotiations about the price to be paid for the properties ensued between Harp and representatives of the defendant, with no meeting of the minds. CT Page 6200
On December 6, 2001, the New Haven Board of Education, through its counsel, initially offered Harp $122,500.00 for 88 James Street. On January 2, 2002, the Board of Education raised their offer to $130,000.00 for 88 James Street. It is the Board's position that this amount is appropriate in that sum reflects the value of the premises reflected in the higher of the two appraisals obtained by the Board for 88 James Street.
The Board offered Harp $97,500.00 for 84 James Street on January 25, 2002. On February 8, 2002, having not heard back from Harp the Board of Education raised its offer to $120,750.00 for 84 James Street. At that same time, the Board indicated that if they were to pursue eminent domain, then they would deposit $115,000.00 with the court, representing the higher of their two appraisals for this property. Thereafter, further efforts toward arriving at agreed upon prices for either property were unsuccessful.
In dealing with the Board, Harp never made a demand for a specific sum he was seeking for compensation in regard to either property. He complained that the Board's offers would leave him with what he estimated to be a $72,000.00 to $106,000.00 deficiency on the two properties, with respect to the outstanding mortgages. He is dissatisfied with the Board's offers because the Board's attorney, when trying to negotiate with Harp, explained that any offer he made was going to be `circumscribed' by the appraisals that the Board had in hand. The Board's attorney had authority to negotiate with Harp for a sum somewhat greater than the appraised values. However, Harp never came back to him with a dollar amount that he was agreeable to for the acquisition of either property by the Board. As of the time of the hearing on this matter, Harp had not procured appraisals of the fair market value of his properties.
Harp claims that the Board of Education has failed to negotiate with him in good faith and therefore should be enjoined from exercising its eminent domain powers in the taking of his properties at 84 and 88 James Street. He fears he will not be provided adequate compensation and will lose money if the takings proceed. His fears also include concerns that his tenant's will not pay rent once they know the property is subject to a taking by the Board of Education.
However, in pursuing conversations on negotiation, Harp told the Board attorney that the Board was not even in the same ballpark with him as to the price he should be paid for the properties. The Board has agreed to refrain from taking the properties by eminent domain, pending this decision.
"The principle purpose of a temporary injunction is to preserve the CT Page 6201 status quo until the rights of the parties can be finally determined after a hearing on the merits." (Internal quotation marks omitted.)Clinton v. Middlesex Mutual Assurance Co., 37 Conn. App. 269, 270,655 A.2d 814 (1995). The standard for the granting of a temporary injunction in Connecticut is well settled. There is a four part test for the issuance of a temporary injunction: "(1) the plaintiff ha[s] no adequate legal remedy; (2) the plaintiff would suffer irreparable injury absent [the injunction]; (3) the plaintiff [is] likely to prevail . . .; and (4) the balance of the equities favor[s the issuance of the injunction]." Waterbury Teachers Association v. Freedom of InformationCommission, 230 Conn. 441, 446, 645 A.2d 978 (1994). "In general, a court may, in its discretion, exercise its equitable power to order a temporary injunction pending final determination of the order, upon a proper showing by the movant that if the injunction is not granted he or she will suffer irreparable harm for which there is no adequate remedy at law. . . . In exercising its discretion, the court, in a proper case, may consider and balance the injury complained of with that which will result from interference by injunction." (Citations omitted; internal quotation marks omitted.) Moore v. Ganim, 233 Conn. 557, 569, n. 25, 660 A.2d 742
(1995).
The claim of the plaintiff is that if the condemnation proceedings are initiated he will be deprived of due process as protected under the state and federal constitutions. This is because he claims that the exercise of the power of eminent domain over his two properties will be the illegal exercise of governmental power.
However, at the outset, the plaintiff is operating under a misunderstanding of the statute under which the Board intends to proceed with condemnation. It is the plaintiffs position that the Board failed to negotiate with him as he argues is required by General Statutes §48-6[1]. The statute includes a clause that a municipality may take a property if it cannot agree with the owner upon the amount to be paid. While the Board asserts that it has negotiated in good faith with Harp, it points out that it is proceeding under § 48-5[2] and 10-241 and 241a[3]. None of these provisions have language inferring the necessity of negotiation prior to a taking. The court notes that the correspondence from the Board makes clear that it is making an offer and inviting communication from Harp if he wished to discuss the offer. It further notes that the Board is attempting to arrive at a negotiated purchase price, when it refers to taking back a negotiated price for formal approval. In fact, it is Harp who failed to continue negotiations for he felt the Board was just too low in its offers. Negotiations in good faith do not require the Board to capitulate in a position that it feels justified in taking, especially when it is based upon outside appraisals. The taking process allows Harp the opportunity to have a court CT Page 6202 of competent jurisdiction determine the fair market value he should have been paid for the property if he perceives the Board's statement of compensation to be too low.
The court finds that Harp has no redressable injury, only a self-perceived one, for the process of negotiations that have ensued. The Board has acted in good faith negotiating with him, notwithstanding the lack of statutory directive to do so. Further, the court finds that inasmuch as there was no duty upon the Board to act further, the injury Harp perceives or fears can be addressed in his claim for damages when and if he appeals the amount of compensation for each property. Finally, the equities do not favor Harp. The Board needs this property to proceed with the construction of an elementary school for which it has already found a public need in the Fair Haven community of New Haven. To hold up the eminent domain so that he can engage further in negotiations, which have been, to the present time, unsuccessful and (in any case) would not have a binding effect on either party, will only frustrate this public purpose to no tangible end.
Therefore, the court finds that the plaintiff has failed to sustain his burden of proof for the issuance of a temporary injunction. The application for temporary injunction is denied.
 The court By ___________________, J. Lynda B. Munro, Judge